1

2

3                                                              O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   REGINALD LENARD SMITH,          )  Case No. CV 11-10666 DDP (PJWx)
                                      )
12                  Plaintiff,        )  **ORDER DENYING IN PART AND**
                                      )  **GRANTING IN PART DEFENDANTS'**
13        v.                          )  **MOTION TO DISMISS**
                                      )
14   COUNTY OF LOS ANGELES; LOS       )  [Dkt. No. 86]
     ANGELES COUNTY SHERIFF'S         )
15   DEPARTMENT; Does 1 through       )
     10, both their personal and      )
16   official capacities,            )
                                      )
17                  Defendants.       )
     _____ )

18

19        Presently before the Court is Defendants' Motion to Dismiss

20   Plaintiff's Second Amended Complaint ("SAC").  Having heard oral

21   arguments and considered the parties' submissions, the Court adopts

22   the following order.

23   **I.    BACKGROUND**

24        In 1991, a California state court issued a felony warrant for

25   the arrest of a person then identified as "Reggie Lamar Smith"

26   (later identified as "Robert Lee Cooks").  (SAC ¶ 31; Decl. Donald

27   Cook ¶ 3.)  In 2007, Plaintiff, whose name is Reginald Lenard

28   Smith, was stopped by police in Tennessee for a minor traffic

1  violation.  (SAC ¶ 33.)  After a warrant check, Plaintiff was

2  arrested by the Tennessee police under the warrant issued for

3  Cooks.  (Id.)  Eleven days later, he was extradited to California,

4  where he was held for thirteen days until a California court

5  ordered his released because he was not the subject of the warrant.

6  (Id.)

7      In 2011, Plaintiff was *again* arrested under the warrant

8  intended for Cooks, this time by the Los Angeles Police Department

9  ("LAPD").  (Id. at ¶ 35.)  Plaintiff alleges that LAPD officers, in

10 making the arrest, queried the County Warrant System ("CWS"), a

11 warrant information database maintained by Los Angeles County.

12 (Id.)  Plaintiff alleges that the County and Los Angeles Sheriff's

13 Department ("LASD") advise local police that CWS is "the *only*

14 practical means for determining if an arrestee has an outstanding

15 Superior Court warrant."  (Id.)  Plaintiff alleges that the County

16 and/or LASD failed to properly update CWS to indicate that he was

17 not the subject of the warrant, proximately causing the second

18 arrest.  (Id.)

19      Plaintiff further alleges that failure to update the record

20 has proximately caused the United States Department of State to

21 deny his application for a passport, because the State Department

22 also relies on the erroneous warrant and/or CWS to check applicants

23 for outstanding warrants.  (Id. at ¶ 37.)

24      Consequently, Plaintiff now sues for injunctive relief and

25 damages, for himself and a putative class of others similarly

26 situated, alleging constitutional violations under the Fourth and

27 Fourteenth Amendments and violation of Cal. Civ. Code § 52.1.  (Id.

28 at ¶¶ 40-50.)

2

**II.  LEGAL STANDARD**

In order to survive a motion to dismiss for failure to state a claim, a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 55 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).

**III. DISCUSSION**

Defendants seek to dismiss the SAC on three grounds.  They argue that (1) precedent forecloses claims based on the Fourth Amendment's "particularity" requirement for warrants; (2) any Fourteenth Amendment claim would be duplicative of the Fourth Amendment claim, and therefore also foreclosed; and (3) Plaintiff's alleged facts do not state a cause of action under Cal. Civ. Code § 52.1, which requires a showing of threat, intimidation, or coercion.  The Court addresses each ground in turn.

**A.  Fourth Amendment Claims**

The Fourth Amendment provides that arrest warrants must "particularly describe[e] . . . the persons . . . to be seized." U.S. Const. amend. IV.  Generally speaking, an arrest warrant that correctly names the person to be arrested and provides a detailed physical description is sufficiently particular. Rivera v. Cnty.

1  <u>of Los Angeles</u>, 745 F.3d 384, 388 (9th Cir. 2014) <u>cert. denied sub</u>

2  <u>nom. Rivera v. Cnty. of Los Angeles</u>, Cal., No. 14-385, 2014 WL

3  5025763 (U.S. Dec. 15, 2014).  A person mistakenly detained under a

4  warrant that meets those particularity requirements cannot frame a

5  Fourth Amendment claim.  Courts have generally held that there must

6  be some play in the joints of the warrant system – enough to allow

7  for honest, reasonable mistakes.

8       Plaintiff has argued that Defendants, knowing that he is *not*

9  the subject of the outstanding warrant at issue, should add

10  biometric identifying numbers to the warrant file in CWS that would

11  positively exclude him.  (SAC at ¶ 34-37.)  In a prior order in

12  this case, Judge Feess lamented "out-of-date Fourth Amendment

13  jurisprudence, which has failed to require the use of unique

14  identifiers despite the availability of simple and cheap

15  technologies that would avoid the kind of repeated

16  mis-identification that he has endured," but ultimately held that

17  Plaintiff could not state a Fourth Amendment particularity claim,

18  given the current state of the law.  (Dkt. No. 32 (order of Sept.

19  11, 2012).)  Since then, however, the Ninth Circuit has confirmed

20  that the use of biometric identifying numbers, however advisable it

21  might be, is not required by the Fourth Amendment.  <u>Rivera</u>, 745

22  F.3d at 388; <u>Gant v. Cnty. of Los Angeles</u>, No. 12-56080, 2014 WL

23  6613049, at *2 (9th Cir. Nov. 24, 2014).  Thus, if failure to

24  update CWS with biometric identifying numbers were the only ground

25  for Plaintiff's Fourth Amendment claim, it would fail.

26       A slightly different question is presented by Defendants'

27  alleged failure to update the system to show that Plaintiff had

28  been affirmatively exonerated as not the subject of the warrant.

There is authority, albeit only in dictum, for the idea that in
some circumstances "inputting notice of judicial clearance forms in
law enforcement databases may be necessary to prevent repeated
mistaken arrests." Gant v. Cnty. of Los Angeles, 772 F.3d 608, 616
(9th Cir. 2014). Gant was decided eight months after Rivera, but
it was decided at the same time and by the same panel as the Gant
companion case cited above (2014 WL 6613049). So it is unlikely
that this dictum casts doubt on Rivera's firm rule that a warrant
is sufficiently particular if it contains a true name and some
other descriptor. What the Gant court might have been suggesting
is that if the warrant lacked sufficient additional descriptors, it
might be necessary to enter the judicial clearance into the file:
"The outcome of Gant's Fourth Amendment claim against the L.A. City
defendants might be different if the warrant for Kevin Gant did not
include a CII number." Gant, 772 F.3d at 616. That is not the
case here; Plaintiff acknowledges that the warrant contains a
number of additional descriptors. (SAC ¶ 32.)

On the other hand, courts have fairly consistently held that
warrants which have an incorrect name on them may be the subject of
a Fourth Amendment particularity requirement. See West v. Cabell,
153 U.S. 78, 85-86 (1894) ("By the common law, a warrant for the
arrest of a person charged with crime must truly name him . . . .
The principle of the common law . . . has been affirmed in the
American constitutions . . . ."); Powe v. City of Chicago, 664 F.2d
639, 645 (7th Cir. 1981) ("[A]n arrest warrant that incorrectly
names the person to be arrested will usually be deemed insufficient
to meet the fourth amendment's particularity requirement unless it
includes some other description of the intended arrestee that is

sufficient to identify him."). In particular, a warrant that includes known aliases but not a legal name may fail on particularity. Rogan v. City of Los Angeles, 668 F. Supp. 1384, 1391 (C.D. Cal. 1987) ("[A]n arrest warrant does not 'correctly name' the suspect if it accurately sets forth one or more of the suspect's aliases but fails to provide his correct, legal name."); Reyes v. City of Glendale, No. CV 05-0253 CAS MANX, 2009 WL 2711961, at *5 (C.D. Cal. Aug. 26, 2009) (denying summary judgment on validity of warrant where officer "fail[ed] to include additional information" showing that suspect's true last name might be "Herrera" rather than "Reyes") Robinson v. City & Cnty. of Denver, Colorado, No. 12-CV-00483-WYD-KMT, 2014 WL 1395758, at *4 (D. Colo. Apr. 10, 2014) (warrant invalid where it used alias rather than legal name and provided no additional information).

Additionally, where the details other than the name are incorrect, the warrant may fail for lack of particularity, even if the name is correct – especially if the incorrect detail is likely to result in an innocent person being arrested. Wanger v. Bonner, 621 F.2d 675, 682 (5th Cir. 1980) (warrant with correct name but incorrect address is not valid when "in approximately twenty to twenty-five percent of similar instances the warrant address is incorrect"); Robinson, 2014 WL 1395758, at *5 (D. Colo. Apr. 10, 2014) (lack of particularity was "compounded by the fact that when Goos received the warrant, she modified it by taking out the only information related to Cagle-his SID number, and replacing it with Plaintiff's SID number").

The Powe court, while noting that "the fourth amendment does not guarantee that only the guilty will be arrested," nonetheless

1   held that warrants that "create a substantial risk . . . that a
2   person to whom not the least suspicion has attached will be
3   arrested . . . cannot be tolerated under the fourth amendment."
4   Powe, 664 F.2d at 648.  The court analogized to a series of cases
5   dealing with overly broad search warrants.  Just as a warrant that
6   referred only to an entire apartment building or to a floor of a
7   building comprising three separate apartments would lack
8   particularity, because it would authorize the search of numerous
9   homes, so too would an arrest warrant that lacked additional,
10  correct information narrowing the field of possible arrestees,
11  because it would authorize the arrest of numerous, mostly-innocent
12  people.  Id. at 648 & n.11.

13      Plaintiff, in his opposition, presents allegations that the
14  warrant in question is for a man whose true name is actually Robert
15  Lee Cooks, and that Defendants have had that information for some
16  time-at least since 2007, apparently.  (Decl. Donald Cook, ¶¶ 3-6.)
17  Although "someone willing to manually navigate through all CWS
18  fields" could theoretically have discovered this information,
19  Plaintiff alleges that it is not readily apparent to police
20  officers when the review the warrant under normal circumstances.
21  (Id. at ¶ 10.)  Additionally, Plaintiff alleges that Defendants
22  have compounded the inaccuracy of the warrant by enter *Plaintiff's*
23  *birth date* into the date-of-birth field, rather than any known
24  birth date for Cooks.  (Id. at ¶ 4.)  Plaintiff alleges that an
25  error in the date-of-birth field is particularly problematic,
26  because the name and date of birth are the two identifiers police
27  routinely use to run warrant checks.  (Id. at ¶ 8.)  Finally,
28  Plaintiff alleges that Defendants entered *Plaintiff's FBI number*

1  *and driver's license number* into the warrant information after his

2  first arrest.  (<u>Id.</u> at ¶ 11.)  Thus, notwithstanding the presence

3  of other descriptors, such as height, weight, and eye and hair

4  color, (SAC ¶ 32), the inaccurate name combined with the inaccurate

5  date of birth, FBI number, and driver's license number could indeed

6  result in a warrant that creates a "substantial risk" of mistaken

7  arrest.  This, as the <u>Powe</u> court suggested, is enough to sustain a

8  Fourth Amendment claim.

9      However, Plaintiff has not yet pled these facts in his

10  complaint.  This is somewhat perplexing, as he has known of the

11  name Robert Lee Cooks since at least 2012.  (Dkt. No. 32 at 10.)

12  The fact that Cooks has never used Plaintiff's birth date as his

13  own, however, appears to be new information that Plaintiff did not

14  have prior to discovery.  The information about the FBI number and

15  driver's license number may also be newly discovered.  (Cook Decl.,

16  ¶ 3-4, 11.)

17      The Court therefore finds that Plaintiff's Second Amended

18  Complaint does not state a claim under the Fourth Amendment, but

19  that it could do so with amendment.[1]  Plaintiff's claim is

20  dismissed with leave to amend.

21  **B.   Fourteenth Amendment Claims**

22      Plaintiff brings his § 1983 complaint under both the Fourth

23  and the Fourteenth Amendments.  (SAC, ¶ 50.)  Defendants argue that

24  the Fourteenth Amendment claim is, at best, duplicative of the

25  Fourth Amendment claim.  They point to precedent for the

26  proposition that where there is "an explicit textual source of

27  _____

28      [1]At oral argument, Defendants' counsel appeared to agree that
Plaintiff could state a Fourth Amendment claim with amendment.

constitutional protection" against some form of governmental abuse,
that text, and "not the more generalized notion of 'substantive due
process,' must be the guide for analyzing" the claim.  <u>Graham v.
Connor</u>, 490 U.S. 386, 395 (U.S. 1989).  Because they read
Plaintiff's challenge as solely attacking the particularity of the
warrant, Defendants assert that the Fourth Amendment alone applies.

The Court, however, does not read Plaintiff's complaint so
narrowly.  First, Plaintiff does not simply say that the warrant is
insufficiently particular; he suggests that the failure to update
the system "with the facts of Plaintiff's August 28, 2007
exoneration" is a separate Fourteenth Amendment violation.  (Opp'n
at 7:12-17.)  The Fourteenth Amendment is not rendered irrelevant,
certainly, by the fact that the word "warrant" appears in the
claim, as the Ninth Circuit has held more than once.  <u>See</u> <u>Gant v.
Cnty. of Los Angeles</u>, 772 F.3d 608, 622-23 (9th Cir. 2014) (holding
that, notwithstanding the existence of a valid warrant, a plaintiff
could make out a Fourteenth Amendment claim if he had "complained
to the L.A. County defendants that they had the wrong person"); <u>Lee
v. City of Los Angeles</u>, 250 F.3d 668, 683 (9th Cir. 2001) (the
existence of a valid warrant notwithstanding, "a detainee has a
constitutional right to be free from continued detention after it
was or should have been known that the detainee was entitled to
release").

Nor is it necessary, to state a Fourteenth Amendment claim,
for the state to have deliberately held someone after discovering
the error.  Failure to institute procedural safeguards to prevent
the deprivation of liberty can, itself, be a Fourteenth Amendment

1  violation, separate from the Fourth Amendment particularity

2  inquiry:

> John had a liberty interest in being free from a twelve-day
> incarceration without any *procedural safeguard in place to*
> *verify the warrant* he was detained on was his and in the face
> of his repeated protests of innocence.  In light of the
> importance of John's liberty interest, the *significant risk of*
> *deprivation of that interest through the City's warrant*
> *procedures*, and the minimum burden to the City of instituting
> *readily available procedures for decreasing the risk of*
> *erroneous detention*, the procedures afforded by the City to
> John failed to provide him due process under the Fourteenth
> Amendment.

14  Fairley v. Luman, 281 F.3d 913, 918 (9th Cir. 2002); Gant v. Cnty.

15  of Los Angeles, 772 F.3d at 619 (stating the Fairley holding as "a

16  public entity can be liable under the Fourteenth Amendment for

17  failing to institute readily available procedures for decreasing

18  the risk of erroneous detention").

19      Judge Feess has already held as much in his 2012 order, noting

20  that Plaintiff's interest in not being detained was significant,

21  the risk of erroneous detention was "not insubstantial," and the

22  burden of adding biometric indicators to the warrant was

23  "minimal."[2]  (Dkt. No. 32 at 7-8.)  However, Judge Feess also noted

24  Plaintiff's Complaint showed that it was not *Defendants* who

25  detained Plaintiff (at least the second time), but another law

26  enforcement agency – the LAPD.  (Id. at 8-9.)  Out of concern that

27

28  ――――――――――――――――
[2]These elements go to satisfying the due process balancing
test established in Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

1   detention by another agency might not provide the proximate causal

2   link necessary to make out the Fourteenth Amendment claim against

3   Defendants, Judge Feess dismissed the claim.  (<u>Id.</u> at 9.)

4        With the benefit of revisions to the complaint as well as

5   additional briefing and argument, however, the Court is now

6   convinced that the Fourteenth Amendment due process argument may

7   proceed.  In the original Complaint, Plaintiff merely alleged the

8   arrest by the LAPD and stated that "had LA County and/or LASD

9   officials updated CWS . . . the LAPD would not have arrested

10  Plaintiff."  (Complaint, ¶ 36.)  In the SAC, however, Plaintiff

11  alleges a substantial working relationship between LAPD and the

12  County:

13        LA County and LASD, over many years going back decades, have

14        informed and advised Los Angeles County law enforcement

15        agencies that the agencies must use CWS to determine if a

16        person has an outstanding warrant issued by the Superior

17        Court, and that CWS is the *only* practical means for

18        determining if an arrestee has an outstanding Superior Court

19        warrant.

20  (SAC, ¶ 35 (emphasis in original).)  In other words, the County

21  operates a sort of warrant clearinghouse for law enforcement

22  agencies within the county and encourages use of this centralized

23  process for verifying warrants.  The Court finds that these

24  allegations are sufficient to provide the necessary causal nexus.[3]

25  

26       [3]It is also possible that as a *general* matter a due process
    complaint can proceed even if detention is by another agency.
27  Footnote 5 in <u>Fairley</u> suggests that detention by another law
    enforcement agency working for the same state might be enough to
28  support the Fourteenth Amendment claim, at least when the defendant
                                                    (continued...)

1    It is not, of course, the case that any initial mistaken

2    arrest an another person's warrant results in a due process

3    violation.  As Defendants point out, satisfaction of the Fourth

4    Amendment's particularity requirement is all the "process that is

5    due" as to the issuing of warrants, <u>Sanders v. City of San Diego</u>,

6    93 F.3d 1423, 1428-29 (9th Cir. 1996), and the particularity

7    requirement does not demand perfect identification of a suspect.

8    Mistakes, therefore, are inevitable.  There must be some room in

9    the system for reasonable error – especially as to an initial

10   mistaken arrest.

11   But while a first arrest based on a reasonable mistake in

12   identity may be excused, subsequent arrests – *after* the responsible

13   agency has notice of the prior error – cannot be excused.  Mistakes

14   cease to be reasonable after the agency has notice that a warrant

15   puts an innocent person at substantial risk of mistaken arrest, yet

16   fails to take *some* step – exercising its discretion and expertise[4]

17   – to reduce that risk.  The constitutional guarantee of due process

18

19       [3](...continued)
20   agency has had *some* custody of the plaintiff.  More substantially,
     it seems anomalous that a defendant agency could directly cause
21   someone to be subjected to repeated deprivations of liberty without
     being liable for the constitutional violation.

22       [4]The Court does *not* hold that the use of *biometric* information
23   is, per se, the best way to accomplish due process protection of a
     non-suspect's liberty interest.  Very likely, executive agencies
24   could adopt a variety of effective procedures for flagging warrants
     that pose a substantial risk of mistaken arrest.  Something as
25   simple as creating an additional field showing the identity of
     persons previously exonerated on the warrant after mistaken arrests
26   would likely suffice, and would impose a minimal burden on the
     agency.  <u>See</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976) (holding
27   that "identification of the specific dictates of due process
     generally requires consideration of . . . the fiscal and
28   administrative burdens that the additional or substitute procedural
     requirement would entail").

1  does not tolerate a system that refuses to correct known errors,

2  especially if those errors result in the repeated arrest and

3  detention of an innocent person.[5]

4      Because the Court reads the SAC to allege that Defendants did

5  not take any such step to reduce the risk that Plaintiff would be

6  arrested under this warrant, Plaintiff adequately states a claim

7  under the Fourteenth Amendment.[6]

8      The motion to dismiss Plaintiff's Fourteenth Amendment claim

9  is denied.

10 **C.   Cal. Civ. Code § 52.1 Claims**

11     Cal. Civ. Code § 52.1 prohibits interference with

12 constitutional rights by "threat, intimidation, or coercion" and

13 authorizes a private cause of action against any person who

14 violates the statute.  Thus, to satisfy the statute, Plaintiff must

15 _____

16     [5]Procedural due process is fundamentally about reducing the risk of error.  See, e.g., Mathews v. Eldridge, 424 U.S. 319, 344

17 (1976) ("[P]rocedural due process rules are shaped by the risk of error inherent in the truthfinding process . . . ."); Mackey v.

18 Montrym, 443 U.S. 1, 13 (1979) ("[A] primary function of legal process is to minimize the risk of erroneous decisions . . . .");

19 Santosky v. Kramer, 455 U.S. 745, 755 (1982) ("[T]he minimum standard of proof tolerated by the due process requirement reflects

20 . . . a societal judgment about how the risk of error should be distributed . . . .); United States v. James Daniel Good Real

21 Prop., 510 U.S. 43, 55, 114 S. Ct. 492, 501, 126 L. Ed. 2d 490 (1993) ("The [government's] practice . . . creates an unacceptable

22 risk of error.").  A fortiori, where an error is actually known and has the potential to cause substantial future harm, reasonable

23 steps must be taken to mitigate it.

24     [6]Judge Feess also read the Complaint to suggest a deprivation of a Fourteenth Amendment right to travel as well as a property

25 right, both based on the fact that Plaintiff could not obtain a passport.  (Id. at 9 & n.1.)  Although the SAC is not perfectly

26 clear in asserting these claims, there is reasonable textual support for concluding that such claims are being made.  (SAC, ¶¶

27 43, 47, 50.)  Thus, the right to travel and the Plaintiff's property right in his passport provide additional possible grounds

28 for a Fourteenth Amendment claim.  However, neither party argues those grounds in this motion.

1   show not only that there was a deprivation of constitutional rights

2   (as discussed above), but *also* that the deprivation was

3   accomplished by threat, intimidation, or coercion.

4        Defendants argue that the coercion involved must be

5   independent of the constitutional violation, citing Shoyoye v.

6   Cnty. of Los Angeles, 203 Cal. App. 4th 947, 959-60, 137 Cal. Rptr.

7   3d 839, 849 (2012) ("The statute requires a showing of coercion

8   independent from the coercion inherent in the wrongful detention

9   itself."). Plaintiff, on the other hand, relies on Venegas v.

10  Cnty. of Los Angeles, 32 Cal. 4th 820, 843 (2004) (holding

11  plaintiffs adequately stated a cause of action under section 52.1

12  in a case where the coercion involved was unlawful detention).

13       Ordinarily, of course, a California Supreme Court holding

14  would trump an appellate court holding. But Venegas did not

15  squarely confront the issue presented here, which was not argued in

16  that case. The Venegas court focused narrowly on the question of

17  whether a plaintiff who was not a member of a "protected class"

18  could take advantage of § 52.1's cause of action, given that the

19  statute was passed by the legislature in response to hate crimes.

20  Id. It did not directly address the question of whether the

21  statute required coercion apart from the constitutional violation.

22  This is perhaps owing to the unusual facts of the case. The chief

23  constitutional violation alleged was an unlawful search of a

24  couple's home, nominally consented to by the wife while the husband

25  was being (allegedly unlawfully) detained in jail. Id. at 827-28.

26  Thus, the detention in the case, although it *also* allegedly

27  violated the husband's rights, was separate from the main

28  constitutional violation. Arguably, it was the use of the

1  detention of the husband as leverage against the wife that provided

2  the hook for the § 52.1 claim, although the Venegas court did not

3  say for certain.

4       Thus, federal and California courts have not come to a settled

5  place about the need for an independent coercive act in the years

6  since Venegas, and even since Shoyoye.  See, e.g., Shoyoye, 203

7  Cal. App. 4th at 960-61 (noting disagreement among federal courts);

8  Bender v. Cnty. of Los Angeles, 217 Cal. App. 4th 968, 978 (2013)

9  (noting Shoyoye's holding but declining to "weigh in on the

10 question whether the Bane Act requires 'threats, intimidation or

11 coercion' beyond the coercion inherent in every arrest"); Bass v.

12 City of Fremont, No. C12-4943 TEH, 2013 WL 891090, at *5 (N.D. Cal.

13 Mar. 8, 2013) (declining "a broad reading of Shoyoye" as "contrary

14 to Venegas").

15      Nonetheless, in November 2014, the Ninth Circuit ruled on a

16 set of related cases – including one involving Plaintiff himself –

17 regarding detentions based on insufficiently-updated warrants and

18 identity confusion.  In those cases, the court appears to have

19 adopted a broad reading of Shoyoye as requiring a separate coercive

20 act:

21      [T]he California Court of Appeal recently held that "where

22      coercion is inherent in the constitutional violation alleged,

23      i.e., an overdetention in County jail, the statutory

24      requirement of 'threats, intimidation, or coercion' is not

25      met.  The statute requires a showing of coercion independent

26      from the coercion inherent in the wrongful detention itself."

27      Shoyoye v. Cnty. of Los Angeles. Gant did not allege any

28      independent coercive acts by the L.A. County defendants. We

15

1    therefore affirm the district court's order dismissing this

2    claim.

3  Gant v. Cnty. of Los Angeles, No. 12-56080, 2014 WL 6613049, at *1

4  (9th Cir. Nov. 24, 2014) (citation omitted).  See also Gant v.

5  Cnty. of Los Angeles, 772 F.3d 608, 623-24 (9th Cir. 2014)

6  (allowing another plaintiff's § 52.1 claim to proceed because "a

7  trier of fact could conclude that the officers' quick, insistent

8  questioning was intended to coerce" him).

9       Thus, it would appear that the Ninth Circuit, like the Shoyoye

10 court, interprets § 52.1 to require a coercive act separate from

11 the wrongful detention itself.  Here, the acts alleged, even if

12 found to violate Plaintiff's constitutional rights, are

13 administrative in nature, and not intimidating or coercive, except

14 in their incidental effect.  Thus, Plaintiff does not state a

15 viable claim under § 52.1.

16 **IV.  CONCLUSION**

17      The Court GRANTS the Motion to Dismiss as to Plaintiff's

18 Fourth Amendment claim, but Plaintiff is granted LEAVE TO AMEND.

19 Any amended complaint must be filed within 20 days of the date of

20 this order.  The Court DENIES the motion as to the Fourteenth

21 Amendment claims.  Finally, the Court GRANTS the motion as to

22 Plaintiff's state law claim under Cal. Civ. Code § 52.1.

23

24 IT IS SO ORDERED.

25

26 Dated: January 16, 2015

27                              DEAN D. PREGERSON
                                United States District Judge

28