**DONALD W. COOK**, CSB 116666
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA  90010
manncook@earthlink.net
(213) 252-9444 / (213) 252-0091 facsimile

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD LENARD SMITH, individually and as a class representative, | Case No. CV11-10666 DDP (PJWx) |
| Plaintiff, | **NOTICE OF PENDING LAWSUIT** |
| vs. | |
| COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, DOES 1 through 10, both their personal and official capacities, | |
| Defendants. | |

TO BARBARA LEE FRYER (of Lynden, WA):

This is to notify you that a lawsuit has been commenced against you. You have been sued as DOE 1.

A copy of the Third Amended Complaint and Summons are attached to this Notice.

DATED: March 18, 2015

**DONALD W. COOK**
Attorney for Plaintiff

By_____
Donald W. Cook

00102531.WPD

Name & Address: Robert Mann, CSB#48293
Donald W. Cook, CSB#116666
3435 Wilshire Blvd., Suite 2900, L.A., CA 90010
(213) 252-9444 phone; (213) 252-0091 facsimile
manncook@earthlink.net
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

REGINALD LENARD SMITH, individually and as a
class representative,

PLAINTIFF(S)

*COUNTY OF LOS ANGELES*
LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, CITY
OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT,
LEE BACA, DOES 1 through 10, both their personal and official
capacities,

DEFENDANT(S).

CASE NUMBER

CV11-10666P (PZx)

**SUMMONS**

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint
☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer
or motion must be served on the plaintiff's attorney, _Robert Mann and Donald W. Cook_____, whose address is
_3435 Wilshire Blvd., Suite 2900, Los Angeles, CA  90010_____. If you fail to do so,
judgment by default will be entered against you for the relief demanded in the complaint.  You also must file
your answer or motion with the court.

DEC 2 7 2011

Clerk, U.S. District Court

Dated: _____

By: _____

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed
60 days by Rule 12(a)(3)].*

1 | **DONALD W. COOK**, CSB 116666
ATTORNEY AT LAW
2 | 3435 Wilshire Blvd., Suite 2910
Los Angeles, CA  90010
3 | manncook@earthlink.net
(213) 252-9444
4 | (213) 252-0091 facsimile

5 | Attorney for Plaintiff

6 |

7 |

8 | # UNITED STATES DISTRICT COURT

9 | # CENTRAL DISTRICT OF CALIFORNIA

10 |

| | |
|---|---|
| REGINALD LENARD SMITH, individually and as a class representative, | Case No. CV11-10666 DDP (PJWx) |
| Plaintiff, | **THIRD AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| vs. | |
| COUNTY OF LOS ANGELES; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; UNNAMED LAW FIRM, business form unknown; UNNAMED LAWYER, an individual; and DOES 1 through 10, both their personal and official capacities, | 1. Class-Based Injunctive Relief (42 U.S.C. § 1983)<br>2. 4th Amendment Particularity (42 U.S.C. § 1983)<br>3. Due Process (42 U.S.C. § 1983)<br>4. 4th Amendment Particularity (42 U.S.C. § 1983)<br>5. Due Process / Privacy (*Gonzales v. Spencer*)<br>6. False Imprisonment / Cal. Const. Art. I § 13 |
| Defendants. | |
| | DEMAND FOR JURY TRIAL |

00101486.WPD

TABLE OF CONTENTS

Page

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FACTS COMMON TO ALL CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . 3
    *CII numbers* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *FBI numbers.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *LA Main numbers.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *Livescan* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

CLASS ACTION ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . 12

FACTS RE PLAINTIFF'S WRONGFUL IDENTIFICATION
    ON ANOTHER MAN'S WARRANT . . . . . . . . . . . . . . . . . . . . 15

FIRST CAUSE OF ACTION
    (42 U.S.C. § 1983 – Injunctive Relief) . . . . . . . . . . . . . . . . . . 24

SECOND CAUSE OF ACTION
    (Fourth Amendment Particularity - 2011 Arrest / Denial of US Passport) . . . 24

THIRD CAUSE OF ACTION
    (Due Process) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

FOURTH CAUSE OF ACTION
    (Fourth Amendment Particularity - 2007 Arrest) . . . . . . . . . . . . . . . . . 26

FIFTH CAUSE OF ACTION
    (Due Process - *Gonzales v. Spencer*) . . . . . . . . . . . . . . . . . . . 31

SIXTH CAUSE OF ACTION
    (False Imprisonment / Art. I § 13) . . . . . . . . . . . . . . . . . . . . . . 33

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    On the First Cause of Action . . . . . . . . . . . . . . . . . . . . . . . . . 34
    On the Second and Third Causes of Action . . . . . . . . . . . . . . . . . 35
    On the Fourth, Fifth and Sixth Causes of Action . . . . . . . . . . . . . . 35
    On All Causes of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

DEMAND FOR JURY TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

00101486.WPD

**THIRD AMENDED COMPLAINT**

## INTRODUCTION

1. This action concerns the refusal of Los Angeles County officials to utilize readily available information and existing information systems to accurately identify the subjects of warrants issued by the Los Angeles Superior Court ("Superior Court"), and to institute simple, common-sense processes to insure that when a warrant issues, it identifies its subject by the unique identifiers law enforcement created years ago to address the problem of different persons sharing the same and/or similar names, birthdates, physical descriptors, and the problems of persons using aliases, stealing others' identities, etc. Closely related to this is defendants' indifference to instances where the same person is repeatedly arrested on a warrant meant for another, an indifference that manifests itself by the defendants' refusal to respond to persons' complaints they have been misidentified on others' warrants, or to do anything to prevent a person's re-arrest on the same warrant notwithstanding the knowledge, beforehand, that the person is *not* the warrant's subject.

2. As a result, persons who are not the subject of warrants are not only arrested on warrants meant for others, but can and are arrested again and again on the same warrants. Moreover, whenever someone is arrested on a warrant, the warrant is removed from the various data systems law enforcement uses to check for outstanding warrants. So if the *wrong* person is arrested on the warrant, the warrant's intended subject will no longer face arrest on the warrant. In other words, because of defendants' indifference criminals get a free pass.

3. Plaintiff presents federal claims for relief that arise under 42 U.S.C. § 1983, and supplemental state law claims. Plaintiff seeks declaratory, equitable and injunctive relief to require defendants to maintain and update their warrant depository so that Plaintiff is excluded as the subject of warrant no. MA00209001. Plaintiff seeks certification of an injunctive relief class of persons similarly situated as Plaintiff, *i.e.,* someone who was

00101486.WPD

**THIRD AMENDED COMPLAINT**

cleared of a warrant that was subsequently re-issued but which was *not* updated to exclude person(s) known not to be the warrant's intended subject. Plaintiff also seeks damages for injuries proximately caused by defendants' wrongful refusal to update its warrant database to exclude Plaintiff as the subject of warrant no. MA00209001.

## JURISDICTION

4. Plaintiff's claims arise under 42 U.S.C. §1983. Accordingly, federal jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

5. Plaintiff's claims arise out of, *inter alia*, acts of the County of Los Angeles ("LA County"), Los Angeles County Sheriff's Department ("LASD"), and former Sheriff Lee Baca. Accordingly, venue is proper within the Central District of California.

## PARTIES

### A.    Plaintiff

6. Plaintiff Reginald Lenard Smith, an individual, is presently a resident of the County of Los Angeles, City of Los Angeles.

### B.    Defendants

7. Defendant County of Los Angeles ("LA County") is a public entity organized and existing under the laws of the State of California. Defendant LASD is a public entity within the meaning of California law, and is a LA County agency.

8. Defendant Unnamed Law Firm is a law firm or group of lawyers employed or hired by defendant LA County to represent LA County, or advance its litigation interest as LA County defines it. Defendant Unnamed Lawyer is an individual, an employee of Unnamed Law Firm. Plaintiff will allege their true names when ascertained and the involvement is verified in discovery.

9. Plaintiff is informed and believes and based thereon alleges that DOES are supervisory officials and/or others with responsibility for managing, supervising and/or

00101486.WPD

carrying out policies and practices of the aforementioned defendants, and/or are responsible for practices and policies that result in the wrongful acts complained of.

10. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES, and therefore sues these defendants by fictitious names.  Plaintiff will give notice of their true names and capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that defendant DOES are responsible in some manner for the damages and injuries hereinafter complained of.

11. Plaintiff is informed and believes and based thereon alleges that the acts complained of herein were done with the course and scope of employment by various officials of LA County, and under color of state law.

### FACTS COMMON TO ALL CLAIMS

12. Years ago, law enforcement developed means to reliably identify a person to the exclusion of others who share the same or similar names, birthdates, physical characteristics, and the like. One such means was assigned unique numerical identifiers to persons, with the identifiers matched to persons' fingerprints. Three such identifiers are described below:

A. *CII numbers*. The California Department of Justice ("CDOJ") assigns a unique identifying number to every person booked into a California jail. This number, called a "CII number," is matched to the arrestee's fingerprints. Unless previously created, a CII number is generated upon a person's booking into a California jail; thereafter, the same CII number is used for every subsequent booking of that arrestee. CDOJ will record all subsequent bookings of that person under the same CII number even if the person uses different names, birthdates, social security numbers, etc. CDOJ can do so because a CII number is matched to an arrestee's fingerprints which, of course, are unique and unchanging. CII numbers are also assigned to persons who, for reasons of employment, must be

00101486.WPD

fingerprinted and those prints reported to the CDOJ. For instance, all California lawyers, judges and police officers have CII numbers matched to their fingerprints.

B. A major use of CII number is for generating its subject's criminal history, or "rap sheet," as maintained by the CDOJ. *People v. Martinez*, 22 Cal. 4th 106, 121, 131 (2000) (example of how CII number was used to obtain a person's criminal history). The criminal history will reflect the subject's known full name, aliases, birthdate, residential addresses, the subject's unique identifiers, such as social security, driver's license and FBI number (described below), along with the subject's arrest, prosecution and conviction history, including time spent in state custody.

C. *FBI numbers.* An FBI number is essentially the same as a CII number only at the national level. To index criminal records, FBI assigns a unique alpha-numeric number to an individual whose arrest is reported to the FBI. Plaintiff is informed and believes and based thereon alleges that anyone convicted in California of a felony, has the fact of that conviction (date, charge, sentence, etc.) reported to the FBI. The FBI, Plaintiff is informed, tracks all felony convictions from any jurisdiction within the United States under a person's unique FBI number.

D. *LA Main numbers.* An LA Main number functions like a CII number, except that the LA Main number tracks only Los Angeles County bookings, prosecutions, convictions. As with CII numbers, LA Main numbers are supposed to be unique to an individual because they are matched to a person's fingerprints.

E. *Livescan.* When an arrestee is booked into a California jail, in lieu of manually "rolling" prints the jailer takes an electronic image of the arrestee's fingerprints. The arrestee's fingers are placed on an imaging machine's glass plate; the image is then transmitted electronically to the CDOJ. Within a few minutes the

-4-

00101486.WPD

**THIRD AMENDED COMPLAINT**

CDOJ responds in one of two ways. If the arrestee's prints are already on file, the arrestee's CII number and associated identifiers, along with the arrestee's criminal history, are sent to the arresting agency; if no match is made with existing fingerprints, the CDOJ assigns a newly created CII number and so informs the arresting agency.

13. Plaintiff is informed and based thereon alleges that the facts stated above are well known to those in the law enforcement community. Law enforcement officials also know that CII, FBI and LA Main numbers are proxies for fingerprints. Hence, absent a breakdown or error in the system, two different CII numbers (or FBI number or LA Main number) means two different persons notwithstanding same or similar names, birth dates, etc.

14. Plaintiff is informed and believes and based thereon alleges that law enforcement uses local, state and national law enforcement databases to check for outstanding warrants on persons the police detain. These law enforcement warrant databases are designed to capture, if known, the warrant subject's CII, FBI and LA Main numbers. The CDOJ instructs California law enforcement agencies to include, if known, the warrant subject's CII, FBI and LA Main numbers. The databases are also designed to record information about persons wrongly arrested on warrants meant for another, and the CDOJ instructs California law enforcement agencies to record such information into the database.

15. Plaintiff is informed and believes and based thereon alleges that law enforcement officials also know that if an arrestee has been booked and charged with one or more felony crimes, the fact of that booking will be reflected on the defendant's CDOJ criminal history. If thereafter a bench warrant issues for the defendant's arrest and a person is arrested on that bench warrant, after the person is livescanned the arresting agency can obtain in seconds usually the arrestee's CDOJ criminal history. The livescan

00101486.WPD

**THIRD AMENDED COMPLAINT**

results can often either rule in or rule out the arrestee as the warrant's subject by, for example, showing that the arrestee's CII and/or FBI and/or LA Main numbers do not match the warrant's subject assuming the warrant includes those identifiers as subject descriptor(s). Additionally, the arrestee's criminal history, available in seconds once the subject is livescanned and booking agency receives the livescan results, should reflect the underlying arrest and booking that led to and preceded the warrant's issuance; if the history does not reflect such arrest and booking, it is highly likely the arrestee is *not* the person the warrant seeks.

16. Plaintiff is informed and believes and based thereon alleges that since 1988, defendant LASD has maintained a computer-based system called "*C*ounty *W*arrant *S*ystem" or "CWS." Since 1988, CWS is and has been the depository for all warrants issued by Superior Court, both unlimited and limited jurisdiction (and the Los Angeles Municipal Court before that court became a superior court). When a Los Angeles court issues a warrant, the warrant is actually created and stored as electronic data in CWS.

17. Plaintiff is informed and believes and based thereon alleges that CWS is designed to capture and make available to law enforcement agencies, identification data on a warrant's subject, including but not limited to name(s), date(s) of birth, ethnicity, height, weight, sex, eye and hair colors, and unique identifier numbers such as CII, FBI, LA Main, driver's license, and social security. Plaintiff is further informed and believes and based thereon allege that CWS is also designed to capture information showing that one or more individuals has been exonerated or cleared as being the warrant's intended subject, and that the person can be identified by his unique biometric identifiers such as CII, FBI and LA Main numbers.

18. CWS warrant records can only be accessed and retrieved by a Los Angeles County-based law enforcement agency. To find warrants issued from California courts outside of Los Angeles County, the Los Angeles County-based law enforcement agency

00101486.WPD

**THIRD AMENDED COMPLAINT**

relies on a state wide database called *W*anted *P*erson *S*ystem, or WPS. This process is true for all California counties. That is, an agency can only directly access warrants issued by the agency's host county. To find warrants issued by a California court in a county other than the agency's host county, the agency uses WPS.

19. Since about 1971, the CDOJ has maintained WPS. WPS is a computer database of records of warrants issued by *any* California state court. WPS indexes all active warrants issued by any California state court, regardless of the county in which the court sits. It is through WPS that a law enforcement agency discovers warrants issued by a court outside of the agency's home county. Through WPS, an Orange County-based law enforcement agency learns about a warrant issued by a Los Angeles County court. After WPS alerts the non-Los Angeles County agency about the warrant, that agency contacts the Los Angeles County agency responsible for the warrant. That Los Angeles County agency, in turn, accesses CWS to obtain the warrant's details for forwarding to the agency that has custody of the potential warrant subject.

20. By design of the information systems, CWS interfaces directly with WPS. That way, when a warrant is created in CWS, programmatically a record of that warrant is also created in WPS. For purposes of identifying the warrant's intended subject, CWS data on certain identifiers (name(s), birth date(s), physical descriptions, and unique identifiers) are also duplicated in WPS. However, not all CWS data is duplicated in WPS. Essentially, only the nature of the warrant, its issuance date, warrant subject identifiers, officer safety factors, and issuing agency contact information, is duplicated in WPS.

21. There is a federal warrant database, called *W*anted *P*erson *F*ile or "WPF," managed by the Federal Bureau of Investigation (FBI). Like its state counterpart WPS, WPF is a computer database accessible to law enforcement. Access is made through the FBI-maintained *N*ational *C*rime *I*nformation *C*enter, or NCIC. NCIC provides electronic access to various FBI maintained databases one of which is WPF. If a local law

00101486.WPD

**THIRD AMENDED COMPLAINT**

enforcement agency desires that an arrest warrant be available for execution anywhere in the country, the agency will indicate that information about the warrant (subject identifiers, nature of the warrant, issuing agency, etc.) be recorded in WPF. As with the transfer of information between CWS and the state system WPS, the warrant information for WPF is programmatically entered into WPF. That is, the terminal operator who creates the CWS warrant record does *not* re-type information in order to input the information into WPF; the information is replicated or copied into WPF once it is decided that a warrant (or more precisely information about the warrant) be included in WPF.

22. On a federal level, WPF is to a local law enforcement agency what WPS is to the local agency on the state level. To find a warrant issued from any jurisdiction in the United States, an agency accesses WPF. WPF, in turn, provides information about warrant(s) that *possibly* match to the subject under investigation and directs the agency making the query to contact the agency responsible for the warrant. The agency making the query then contacts the agency responsible for the warrant to determine if the subject at issue is, in fact, the subject of the warrant in question.

23. Plaintiff is informed and believes and based thereon allege that whenever a California law enforcement official seeks to determine if a person is the subject of an outstanding warrant, the official begins the search by running a name, birth date, and possibly a few other obvious or easily obtained identifiers (sex, ethnicity and driver's license number), via a California law enforcement computer system called "CLETS" (*C*alifornia *L*aw *E*nforcement *T*elecommunication *S*ystem). By inputting a single search query (e.g., name / DOB), CLETS uses that query for search both WPS and WPF. And if the official is making the query from a Los Angeles County-based agency, CLETS will use the same query to search CWS, the Los Angeles County warrant depository.

24. Plaintiff is informed and believes and based thereon allege that when CWS, WPS or WPF respond with what is called a "hit" based on a search query, the system is

00101486.WPD

telling the operator the system has, programmatically, located a warrant whose identifiers either match or are a reasonably close match to those used in the search query. That is, the name, DOB and other search criteria (if used) does not need to match exactly the warrant identifiers recorded in system for there to be a hit; they usually do not. Because it is well known that suspects can and do use different names or aliases, and different dates of birth and other identifiers, the warrant databases are designed to find warrants whose subjects' names *sound* similar or have similar spellings, as well as similar birth dates, to the name and/or birth date used in the search query. The warrant databases leave it up to the system's user to determine if, in fact, the warrant listed as a "hit" in response to a search query is actually a warrant meant for the subject of the search query.

25. Plaintiff is also informed and believes and based thereon alleges that warrant subject identifiers created in CWS, WPS and WPF are *not* limited to a single name or single birth date or single driver's license or single social security number; rather, the systems are designed to record many, many AKAs (*Also Known As*). That way, if a warrant's subject has used at various times names of "John Doe," "Bill Smith," "George Bush," and "Barack Obama," all four can be recorded in the warrant database for the same warrant record, with each name recorded in its own name field. If the subject tells the officer his name is "Barack Obama" and the officer uses that name in the search query, the warrant database will nevertheless locate the warrant *even though the warrant was originally issued for "George Bush."* The same principle applies with other identifiers, like birth date, driver's license, etc. For each warrant record, the system searches *all* name fields including the AKA fields for a matching name or phonetically similar name; the system searches *all* birth date fields including AKAs for a matching birth date or birth date within a defined range (anywhere from a few months to a few years), and so on. Hence, from the standpoint of the warrant database, for the same warrant record all names and/or birth dates and/or driver's license numbers, are equally

00101486.WPD

valid and equally searchable. In this way the warrant systems CWS, WPS and WPF) can locate a subject's warrant by name even though the subject has used different names that do not sound alike, e.g., "George Bush" and "Barack Obama."

26. Plaintiff is also informed and believes and based thereon alleges that the foregoing facts have been well-known to law enforcement officials going back many, many years, to the 1970s as a matter of fact. The agencies responsible for maintaining CWS, WPS and WPF, Plaintiff is informed, have informed local law enforcement agencies of their respective program's search and retrieval capabilities, including the facts of search and retrieval capabilities based on AKAs (whether it be a name AKA, birth date AKA, driver's license AKA, etc.).

27. Plaintiff is informed and believes and based thereon alleges that LA County officials can easily and quickly update CWS to include additional identifying information about a warrant's subject, even if the information is acquired after a warrant's original issuance. LA County officials can also easily and quickly update CWS, after a warrant's original issuance, to show that a particular person has been determined *not* to be the warrant's subject. Plaintiff is informed and believes and based thereon alleges that upon updating a warrant record in CWS, programmatically updates will be made to corresponding warrant records in WPS and WPF *if* the updated fields in CWS are among those duplicated in WPS and WPF (not all fields are duplicated).

28. Plaintiff is informed and believes and based thereon alleges that it is, and has been LA County and LASD's custom and practice *not* to include a warrant subject's unique biometric identifiers such as CII, FBI and/or LA Main numbers in a CWS warrant record. Plaintiff is further informed it is and has been LA County and LASD's custom and practice *not* to update a CWS warrant record with a warrant subject's AKAs later discovered or found to be necessary in order to match the warrant to its intended subject. Defendants know that including these additional identifiers helps insure that the warrant

is enforced as against its intended subject. The exception that may exist to this custom or practice is if the Superior Court specifically directs LASD personnel to input into CWS the warrant's subject's additional identifiers. But since, Plaintiff is informed and believes and based thereon alleges, most if not all Superior Court personnel, including judges and their clerks, are unaware of and/or uninformed about additional identifiers, including CII, FBI and/or LA Main numbers, an AKAs, their purpose and how CWS can use these additional identifiers, Superior Court personnel customarily do not direct LASD personnel to so identify warrant subjects.

29. Plaintiff is informed and believes and based thereon alleges that notwithstanding any express formal written policy statement to the contrary, in fact it is the custom or practice of LA County and LASD *not* to update CWS with a warrant's subject's identifying information acquired or learned after the warrant's original issuance, and *not* to update CWS with information that a particular person has been cleared as the warrant's intended subject despite matching (or closely matching) name, birth date, etc. Consequently, it happens frequently that someone already judicially cleared as the warrant's subject will again be re-arrested on the same warrant despite that person's protests and despite the prior judicial clearance.

30. Plaintiff is informed and believes and based thereon alleges that supervisory personnel with LA County and LASD know and/or should know that hundreds if not thousands of persons have been wrongly held in LA County custody on warrants meant for others, yet supervisory personnel have taken no remedial steps to abolish the customs and practices alleged above. To the contrary, Plaintiff is informed and believes and based thereon alleges that if asked supervisory personnel will ratify the existing practices described above and which resulted in Plaintiff still being identified as the subject of a no-bail felony warrant intended for another person.

31. Plaintiff is informed and believes and based thereon alleges that the wrongful

-11-

00101486.WPD

**THIRD AMENDED COMPLAINT**

practices alleged above arise from defendants' deliberate indifference to the problem of mis-identification of the wrong person on another's warrant. Defendants have known for years that these mis-identifications occur, and that they occur for numerous reasons (similar names/birth dates; sloppy initial police investigation; inadequate or incomplete descriptors on warrants, etc.). Defendants' deliberate indifference is evidenced by the following:

A. Despite defendants' own records establish that *thousands* of persons have been wrongly incarcerated in the LA County jail on warrants meant for others, defendants have taken virtually no remedial action to address the problem;

B. In day-to-day practice, LA County jailers routinely ignore evidence that a prisoner have been wrongly incarcerated on another's warrant;

C. No matter how meritorious a prisoner's complaint that he had been arrested on another's warrant (as shown by *non-matching* biometric identifiers, birth dates *and* names reflected on the booking reports), jail officials do not and will not investigate the prisoner's complaint;

D. When a particular egregious incident occurs, e.g., a mentally disabled individual was sentenced to state prison after having been wrongly identified as a warrant's subject even though County officials had at least constructive knowledge the fingerprints did not match, supervisory officials took no corrective action.

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action on his own behalf, and on behalf of the class of all other persons similarly situated, pursuant to Rule 23, Federal Rules of Civil Procedure.

33. There is a "Injunctive Relief Class," under F.R.Cv. Proc. 23(b)(2), and defined as all persons whose names and/or physical descriptors are the same or similar to persons for whom warrants for arrest have been issued by Superior Court, and/or who have been judicially cleared as *not* the subject of arrest warrants issued by the Superior Court, and

00101486.WPD

the warrants on which they have been arrested have been re-issued but without inclusion of the facts of the class members' exoneration.

34. Plaintiff is informed and believes and based thereon alleges that the class defined herein numbers in the thousands. Plaintiff is informed and believes and based thereon alleges that, according to LA County and LASD records, on average two persons or more are released each day from LASD custody because it is determined that they were being wrongly incarcerated on warrants meant for other persons.

35. Plaintiff is informed and believes and based thereon alleges that member identities in the Injunctive Relief Class are readily ascertainable from computer records kept by LA County and LASD defendants. These computer records identify as "wrong defendants" persons who were released from custody because it was determined that they were not the subject of warrants on which they were incarcerated.

36. There are common questions of law and fact that predominate over the questions affecting only individual class members. Those common questions include:

A. Whether defendants must include on a warrant, when it is known, the warrant subject's unique fingerprint-based identifiers that describe him or her to the exclusion of all other persons?;

B. Whether defendants are charged with the knowledge of their own records which indicate, via gross and irreconcilable discrepancies, that a warrant arrestee's unique, fingerprint-based identifiers do not match those of the subject described on the warrant?

C. Whether probable cause exists to believe that an arrestee is the subject of a warrant when defendants know or should know that the warrant arrestee's unique fingerprint-based identifiers do not match those of the warrant's subject?

D. Whether defendants , in a state with a population of over 36 million with many thousands sharing the same or similar names, birthdates, physical

-13-

**THIRD AMENDED COMPLAINT**

00101486.WPD

descriptors, must train their personnel to (1) include on warrants the subject's unique, fingerprint-based descriptors when known or reasonably ascertainable, (2) compare an arrestee's fingerprint-based descriptors with those of the warrant's subject, and (3) review other routinely generated and readily available official law enforcement records (e.g., criminal histories aka "rap sheets") which will rule in or rule out the arrestee's status as the warrant's subject?

E. Once it has been determined that an arrestee is not the warrant's subject, the arrestee is released and the warrant re-issued, must defendants utilize CWS to record, in connection with the re-issued warrant, information to the effect that the aforementioned arrestee is not the warrant's subject and hence, should not be arrested on the warrant? *See Mathews v. Eldrige*, 424 U.S. 319, 334-35 (1976).

37. In accordance with F.R.Cv.Proc. 23(b)(1)(A), prosecutions of separate actions by individual members of each class would create a risk that inconsistent or varying adjudications with respect to individual members of the class and would establish incompatible standards of conduct for the parties opposing the class.

38. In accordance with F.R.Cv.Proc. 23(b)(1)(B), prosecutions of separate actions by individual members of each class would create a risk of adjudications with respect to individual members of the class which would, as a practical matter, substantially impair or impede the interests of the other members of the class to protect their interests.

39. In accordance with F.R.Cv.Proc. 23(b)(2), Plaintiff is informed and believes and thereon alleges that defendants LA County, LASD and Does have acted, threaten to act, and will continue to act on grounds generally applicable to the Injunctive Relief Class, as alleged above, thereby making appropriate final injunctive relief or declaratory relief with respect to the class as a whole.

40. As against the claims of the individual plaintiff, defendants justify their actions on grounds generally applicable to Plaintiff and the class members, to wit: defendants are

-14-

**THIRD AMENDED COMPLAINT**

00101486.WPD

not obligated to record warrant subjects' unique fingerprint-based identifiers on Superior Court warrants, or input such information into law enforcement databases tracking those warrants; defendants are not obligated to record, in association with a Superior Court warrant re-issued after a determination that the wrong person was arrested on the warrant, the facts identifying the person wrongly arrested as well as other information alerting law enforcement that the person is not the warrant's subject; law enforcement personnel need not consider and may ignore non-matching fingerprint-based identifiers once they learn that an arrestee's name and/or birth date and/or physical descriptors match or are similar to those listed for the warrant's subject; defendants are not liable so long as an arrestee is being held on a "valid" warrant, see *Baker v. McCollan*, 443 U.S. 137 (1979); defendants have absolute and/or qualified immunity under various provisions of federal and/or state law.

## FACTS RE PLAINTIFF'S WRONGFUL IDENTIFICATION
## ON ANOTHER MAN'S WARRANT

41. In October 1990, one "Raymond Lee Cooks" (hereinafter "Cooks") sexually assaulted an unknown female. The LASD was the law enforcement agency responsible for investigating the crime and identifying the rapist. Plaintiff is informed and believes and based thereon alleges that in the course of the LASD investigation, LASD officials, using CLETS, came up with *Plaintiff's* identifiers from CDOJ records, and attributed those identifiers as belonging to Cooks. One of Plaintiff's identifiers LASD officials attributed to Cooks was *Plaintiff's* 1962 birth date. Cooks did not have a birth date in 1962, nor did his birth date have a month or day anywhere close to Plaintiff's. Criminal history records for Cooks did not and do not identify him as ever having used or been assigned a 1962 birth date, or any birth date with a month or day similar to Plaintiff's.

42. On November 26, 1990, the LA County district attorney filed a criminal complaint against Cooks, alleging sexual assault charges. The case title was *People v.*

00101486.WPD

*Reggie L. Smith*, case no. MA00209001, Antelope Valley Judicial District of the then-existing Los Angeles County Municipal Court. That same day a warrant issued for Cooks' arrest as the defendant in *People v. Smith*.

43. On November 30, 1990, the LASD booked Cooks into the LA County jail on the aforementioned warrant. Plaintiff is informed and believes and based thereon alleges that Cooks was booked under the name "Reggie Lamar Smith," with a 1960 birth date, and a birth month and day not even close to Plaintiff's 1962 birth month and day. On or about December 3, 1990, Cooks posted a $10,000.00 bond and was released.

44. Up through February 21, 1991, Cooks made his court appearances in *People v. Smith*. On February 21, 1991, Cooks was convicted of a felony violation of Cal. Penal Code § 243.4(a) (sexual battery). He was ordered to return for sentencing on March 13, 1991, in the superior court.

45. Cooks did not appear for sentencing on March 13, 1991. The superior court issued a no-bail felony bench warrant for his arrest, warrant no. MA00209001. Plaintiff is informed and believes and based thereon alleges that Cooks did not appear because he believed he would be sentenced to a state prison term. Plaintiff is also informed and believes that at the time of Cooks' February 21, 1991 conviction, the prosecutor was unaware of Cooks' lengthy criminal history or that he was a twice convicted felon, or that he was then wanted on an outstanding parole violation and a felony warrant from a 1984 LAPD drug arrest. Plaintiff is informed and believes that Cooks believed that by the time of his March 13, 1991 sentencing, the prosecutor would be aware of Cooks' criminal history.

46. On or about March 19, 1991, LASD officials created felony warrant no. MA00209001 in CWS. The warrant identified its subject as "Reggie Smith" with Plaintiff's 1962 birth date, and described him as a 5'10" 180 pound Black male. LASD did *not* use any of Cooks' known AKAs (names or birth dates), or any of his known

-16-

00101486.WPD

**THIRD AMENDED COMPLAINT**

unique identifiers, including Cooks' known fingerprint-matched identifiers (CII, FBI or LA Main numbers).

47. Because warrant no. MA00209001 was a felony no-bail warrant seeking the arrest of a subject who had been *convicted* of the underlying charge but fled before sentencing, anyone arrested on the warrant was approved for extradition from any state. Consequently, the warrant was entered into the state warrant database WPS, and the federal warrant database WPF, with extradition approved. Defendant LASD was identified as the issuing agency, and responsible for extradition of anyone arrested on the warrant.

48. Plaintiff is informed and believes and based thereon alleges that as of March 19, 1991, LASD knew or had constructive knowledge that Cooks' birth name was most likely "Raymond Lee Cooks" or a variation thereof; that his extensive criminal history showed numerous name AKAs, nearly all of which were variations of "Raymond Lee Cooks"; that Cooks' actual birth date was in the mid-1950s; that Cooks had *never* been known to use or been assigned a 1962 birth date, or any birth date with a month and day that was similar to Plaintiff's; that it would be unlikely Cooks would ever be arrested based on a 1960s birth date and/or the name "Reggie Smith," for reasons stated in paragraphs 23-25, *infra*.

49. Plaintiff is informed and believes and based thereon alleges that with a notable exception described below, from March 1991 to August 2007, CWS warrant no. MA00209001 remained outstanding.

50. Plaintiff is informed and believes and based thereon alleges that in March 1995, LA County officials received official confirmation that given the very limited name and incorrect birth date information LASD had used to describe the subject of CWS warrant no. MA00209001, law enforcement officials had been unable to identify Cooks as the subject of warrant no. MA00209001 when officials ran a warrant check on Cooks in

-17-

00101486.WPD

February 1995. Notwithstanding that knowledge, LA County officials did *nothing* to further identify Cooks as the subject of warrant no. MA00209001 by name AKA or other AKA that officials knew Cooks was using and/or had been assigned. Nor did LASD officials take any steps to execute warrant no. MA00209001 on Cooks when told he was in a California state prison.

51. Plaintiff is informed and believes and based thereon alleges that in June 1997, LASD booked into the LA County jail one "Reginald Smith," *not* the Plaintiff, as the subject of warrant no. MA00209001. In June 1997, the superior court ordered this person's release upon concluding this Reginald Smith was *not* the warrant's subject. Plaintiff is informed and believes that LASD and LA County officials had actual knowledge this "Reginald Smith" had been booked into the LA County on this warrant, then exonerated as the "wrong person." Despite this knowledge, LA County officials did *not* update CWS warrant no. MA00209001 to reflect the facts of exoneration. Nor did officials add any of the known AKAs for Cooks to the CWS warrant record. Consequently, CWS had and has no record of this "wrong-person-on-warrant" booking, or of the exoneration.

52. On or about July 25, 2007, Plaintiff Reginald Lenard Smith was living in Antioch, Tennessee, working as a Nissan customer service representative, when he was stopped by the local police for a minor traffic violation. Plaintiff is informed and believes and based thereon alleges that via NCIC the local police ran Plaintiff's name and 1962 birth date in the WPF database, and the database returned CWS warrant no. MA00209001 as possibly matching to Plaintiff. Thereafter, and over Plaintiff's repeated protests he could not be the warrant's subject, Tennessee officials conferred with LA County officials and concluded that Plaintiff was, in fact, the subject of CWS warrant no. MA00209001. Thus, *solely* on the basis Plaintiff was a fugitive from justice in California on CWS warrant no. MA00209001, Plaintiff was extradited from Tennessee to California.

00101486.WPD

On or about August 15, 2007, Plaintiff was booked and incarcerated in the Los Angeles County jail on felony no-bail CWS warrant no. MA00209001.

53. Plaintiff is informed and believes and based thereon alleges that had CWS warrant no. MA00209001 been updated in 1995 or 1997 with the *known* facts of Cooks' AKAs (names, birth dates) and/or biometric identifies (FBI, CII and/or LA Main numbers), Plaintiff would have been exonerated in Tennessee within a few hours of his detention and would not have been extradited to California.

54. Plaintiff is informed and believes and based thereon alleges that had LASD *not* created CWS warrant no. MA00209001 in 1991 using *Plaintiff's* identifiers but instead using the known identifiers for Cooks – identifiers that were different from Plaintiff's – Plaintiff would not have been detained on the warrant in Tennessee. The Tennessee officials either would not have found the warrant in WPF or, if the warrant record in WPF had been located as a possible match, the Tennessee officials would have been able to quickly determine that Plaintiff was not the warrant's subject.

55. After Plaintiff's incarceration in the LA County jail and in response to his vigorous protests he was not the subject of CWS warrant no. MA00209001, LA County officials in the district attorney's office began an investigation. On or about August 22, 2007, using just a few minutes of time accessing online local, state and federal criminal records, a LA County district attorney investigator determined that Plaintiff was *not* the subject of CWS warrant no. MA00209001, that the true subject was Cooks. A few days later on August 27, the same investigator determined, again in just a few minutes checking online official criminal records, that the true subject Cooks was currently incarcerated in Federal prison at Jessup, Georgia, on a 21 year sentence with a projected release date, as of August 2007, in August 2015. This investigator also determined that Cooks had been incarcerated continuously since early 1995, first in state prison then federal prison.

00101486.WPD

56. Plaintiff is informed and believes and based thereon alleges that after the LA County investigator informed the prosecutor of what she had determined, the prosecutor so advised the superior court on or about August 28, 2007. Consequently, on that date the superior court ordered Plaintiff's release because he was *not* the warrant's subject.

57. That same day, August 28, 2007, the superior court re-issued the no-bail felony bench warrant #MA00209001. Upon the warrant's re-issuance, Plaintiff is informed and believes and based thereon alleges that LASD and LA County officials created a new CWS record for warrant #MA00209001. But the CWS warrant record limited it subject descriptors to the same ones used when the warrant issued in March 1991. That is, the name "Reggie Smith" with Plaintiff's 1962 birth date. Pursuant to the policies and practices alleged above, the newly-created CWS warrant record did *not* identify its subject Cooks by any of his known AKAs (names, birth dates, driver's license and social security numbers), or known biometric identifiers. Nor did officials update the CWS warrant record with *any* facts stating that Plaintiff had been cleared as *not* the warrant's subject.

58. But even more incredibly, even though LA County officials knew exactly where the warrant subject Cooks was – in federal prison in Georgia – officials did nothing to inform the federal prison authorities of CWS warrant #MA00209001 and to place a hold on Cooks to prevent his release from prison without allowing LASD officials to take custody of Cooks and extradite him to California. The reason officials did nothing is that LA County has never trained its officials that where, as in this case, a County official determines the whereabouts of the subject of an outstanding felony warrant for which out-of-state extradition is approved, the information should be communicated to the LASD's fugitive warrant detail.

59. Thereafter, re-issued felony no-bail CWS warrant #MA00209001 remained active with out-of-state extradition approved, but with *no* record in CWS of (a) Cooks'

00101486.WPD

**THIRD AMENDED COMPLAINT**

1   identity as a prisoner in federal prison as of August 2007 with an August 2015 release
2   date, or (b) Plaintiff's August 28, 2007 exoneration.

3       60. Plaintiff is informed and believes and based thereon alleges that in November
4   2010, LA County officials finally updated CWS warrant #MA00209001 – *by inputting*
5   *Plaintiff's social security number, driver's license number, CII number, FBI number, and*
6   **Plaintiff's** *CDOJ-recorded name and birth date AKAs*. That is, while County officials
7   were refusing to update CWS warrant #MA00209001 with any of the AKAs and
8   biometric identifiers of warrant subject Cooks, County officials did manage to update the
9   warrant record with *Plaintiff's* identifiers!

10      61. On or about January 27, 2011, Plaintiff was detained then arrested by officers
11  of the Los Angeles Police Department ("LAPD") on CWS warrant #MA00209001. When
12  these LAPD officers detained Plaintiff, the LAPD personnel queried, Plaintiff is
13  informed, CWS. The officers queried CWS because defendants LA County and LASD,
14  over many years going back decades, have informed and advised Los Angeles County law
15  enforcement agencies that the agencies must use CWS to determine if a person has an
16  outstanding warrant issued by the Superior Court, and that CWS is the *only* practical
17  means for determining if an arrestee has an outstanding Superior Court warrant. In
18  reliance upon CWS and LASD and LA County assurances as to CWS's reliability, LAPD
19  personnel arrested Plaintiff in the belief Plaintiff was the subject of warrant
20  #MA00209001. Plaintiff is informed and based thereon alleges that had LA County
21  and/or LASD officials updated CWS to reflect that following Plaintiff's July-August
22  2007 incarceration on this warrant that he had been cleared of this warrant, LAPD never
23  would have arrested Plaintiff.

24      62. Plaintiff is further informed and believes and based thereon alleges that at the
25  time of Plaintiff's January 27, 2011 detention and arrest, defendants knew that (a) LAPD
26  personnel were relying on CWS in order to detain and arrest Plaintiff, (b) LAPD were

-21-

**THIRD AMENDED COMPLAINT**

00101486.WPD

relying on defendants' assurances that CWS was reliable for purposes of detention and arrest, and (c) yet as to Plaintiff, defendants had actual knowledge that CWS *wrongly* identified Plaintiff as the warrant's intended subject.

63. During the January 27, 2011 detention, LAPD officers queried the local, state and federal warrant databases. The databases responded by stating that CWS warrant #MA00209001 was a possible match to Plaintiff. Thereafter, the officers arrested Plaintiff on warrant #MA00209001 because (a) the only name on the warrant, "Reggie Smith," was a close match to Plaintiff's ("Reginald Smith"); (b) the 1962 birth date matched exactly; (c) sex and ethnicity (male Black) matched exactly; and (d) two unique identifiers, one of which as fingerprint-matched, matched exactly – driver's license and FBI number.

64. The officers transported Plaintiff to the LAPD's Wilshire division jail where he was held for several hours, before being released. It appears an LAPD detective or supervisor determined, perhaps by checking Plaintiff's criminal history, that despite the matching identifiers, Plaintiff could not be the subject of CWS warrant #MA00209001 (since he had never been arrested on any criminal charge that could have given rise to the warrant and/or as a result of efforts by Plaintiff's counsel, CDOJ had made a record of Plaintiff's August 28, 2007 exoneration in Plaintiff's CDOJ criminal history).

65. As a further direct proximate cause of defendants' (a) failures and/or refusal to update CWS with Cooks' information and the August 28, 2007 exoneration and (b) updating CWS in 2010 with *Plaintiff's* identifiers instead, in October 2011 the U.S. State Department rejected Plaintiff's September 26, 2011's application for a United States passport. According to the State Department, "on March 30, 1991, the N. Lancaster Court in California entered a warrant for your arrest, warrant number XNOMA00209001," *i.e.,* the warrant for Cooks. Consequently, Plaintiff cannot obtain a US passport.

66. Plaintiff is informed and believes and based thereon alleges that in the fall of

00101486.WPD

2012, one or more LA County officials realized that CWS warrant no. MA00209001 had been updated to specifically identify Plaintiff by his unique identifiers, including the biometric identifiers. Consequently, Plaintiff is informed and believes and based thereon alleges, officials "purged" CWS of the existing CWS warrant no. MA00209001 since it had Plaintiff's identifiers, and created a replacement CWS record of warrant no. MA00209001. This replacement CWS record, however, limited its identifiers to those originally entered in March 1991, *i.e.,* one name only ("Reggie Smith"); *Plaintiff's* 1962 birth date and no other; sex, ethnicity, height, weight and so on. None of Cooks' AKAs were entered, including the known facts of where he was located – in federal prison in Georgia. Hence, Plaintiff Smith, now a resident of the City of Los Angeles, faces a real probability that upon being stopped by law enforcement for any reason whatsoever, e.g., traffic stop, upon running a warrant check law enforcement will again attribute to Plaintiff CWS warrant no. MA00209001 because its subject "Reggie Smith" is a male Black born on Plaintiff's 1962 birth date.

67. Finally, because CWS warrant no. MA00209001 does not accurately identify Cooks, in 2013 Cooks was released from federal prison and placed on supervised release. Subsequently, in February 2014, the federal court in Georgia terminated Cooks' supervised release on Cooks' claim he was rehabilitated and had no outstanding criminal matters.

68. Plaintiff Reginald Lenard Smith timely filed Cal. Gov't Code § 910 claim with LA County. This lawsuit was commenced within six months of the denial.

///

///

///

///

///

-23-

00101486.WPD

**THIRD AMENDED COMPLAINT**

# FIRST CAUSE OF ACTION

## (42 U.S.C. § 1983 – Injunctive Relief)

### (Plaintiff, individually and as class representative,

### against defendants LASD, LA County, and Does)

69. Plaintiff restates and incorporates by reference the foregoing paragraphs as if each paragraph was fully set forth herein.

70. Plaintiff brings this cause of action on his own behalf and in his representative capacity for the Injunctive Relief Class.

71. The conduct complained of herein was undertaken pursuant to the policies, practices and customs of LA County and LASD.

72. Injunctive Relief Class and Plaintiff do not have an adequate remedy at law for the threatened injury alleged herein. The continuing enforcement of the wrongful policies and practices described above is likely to result in the wrongful imprisonment of plaintiff and the class he represents, on warrants meant for other persons. Suits for monetary compensation cannot compensate Plaintiff and the class for the days they will be wrongfully imprisoned on warrants meant for others. Furthermore, the continued refusal to update CWS denies Plaintiff and the class benefits and protected property interests, as shown in the inability of Plaintiff Smith to obtain a US passport. Therefore, Plaintiff and the class are entitled to an injunction against defendants LA County and LASD, and each of them, as stated in the prayer.

# SECOND CAUSE OF ACTION

## (Fourth Amendment Particularity - 2011 Arrest / Denial of US Passport)

### (Plaintiff against defendants LASD, LA County and Does)

73. Plaintiff restates and incorporates by reference the foregoing paragraphs as if each paragraph was fully set forth herein.

74. Defendants' failure and refusal to update CWS with the facts of Plaintiff's

00101486.WPD

**THIRD AMENDED COMPLAINT**

August 28, 2007 exoneration on CWS warrant #MA00209001, coupled with using *Plaintiff's identifiers* to identify the subject of CWS warrant #MA00209001 even though defendants knew or should have known that Plaintiff's identifiers were not those of Cooks and would not result in an apprehension of Cooks but instead would cause Plaintiff to be identified as the warrant's subject, violated Plaintiff's rights as protected by the particularity clause of the Fourth Amendment to the United States Constitution. Furthermore, the ongoing failure and refusal to update CWS with the facts of Plaintiff's exoneration, is pursuant to long-standing policies and/or practices and/or customs of the LASD and LA County. As a proximate result of these failures and refusals, Plaintiff was arrested by LAPD personnel on January 27, 2011, and is unable to obtain a US passport, thereby entitling Plaintiff to recover compensatory damages. (On *this* cause of action Plaintiff does *not* seek damages arising from his July 25, 2007 arrest on CWS warrant no. MA00209001.)

**THIRD CAUSE OF ACTION**

**(Due Process)**

**(Plaintiff against defendants LASD, LA County and Does)**

75. Plaintiff restates and incorporate by reference the foregoing paragraphs as if each paragraph was fully set forth herein.

76. Defendants' failure and refusal to update CWS with the facts of Plaintiff's August 28, 2007 exoneration on warrant #MA00209001, including updating CWS to identify the warrant subject by Cooks' identifiers which defendants in fact know are Cooks,' violated Plaintiff's rights as protected under the Fourteenth Amendment to the United States Constitution. Furthermore, the failure and refusal to update CWS with the facts of Plaintiff's exoneration, is pursuant to long-standing policies and/or practices and/or customs of the LASD and LA County. As a proximate result of these failures and refusals, Plaintiff was arrested by LAPD personnel on January 27, 2011, and is unable to

-25-

obtain a US passport, thereby entitling Plaintiff to recover compensatory damages. (On *this* cause of action, Plaintiff does *not* seek damages arising from his July 25, 2007 arrest on warrant no. MA00209001.)

## FOURTH CAUSE OF ACTION

### (Fourth Amendment Particularity - 2007 Arrest)

### (Plaintiff against defendants LASD, LA County and Does)

77. Plaintiff restates and incorporates by reference the foregoing paragraphs as if each paragraph was fully set forth herein, except limited to facts and events that had occurred as of July 25, 2007.

78. In March 1991, County officials knew or should have known that the suspect name and 1962 birth date ascertained as a result of the LASD's October/November 1990 investigation, were identifiers *not* likely to identify the true subject of *People v. Smith* and, in fact, were the identifiers of another person. Despite that knowledge, County officials created, on or about March 19, 1991, CWS warrant no. MA00209001 using identifiers ascertained in the October/November 1990 investigation, *i.e.,* one name ("Reggie Smith") with one birth date, a 1962 birth date birth known *not* to have ever been used or assigned to the subject of warrant no. MA00209001.

79. In March 1995, County officials received official confirmation that, in fact, the identifiers listed on CWS warrant no. MA00209001 were inadequate to identify the warrant's intended subject Cooks. At about the same time, County officials received official confirmation of Cooks' AKAs, including CII and FBI numbers. This was basically the same information defendants had or had notice of four years earlier in March 1991 and which if used on the warrant, would identify Cooks as the warrant's subject.

80. In 1997, County officials were again informed of the inability of the identifiers on CWS warrant no. MA00209001 to identify Cooks, when in June an unknown wrong person was exonerated on the warrant.

-26-

00101486.WPD

**THIRD AMENDED COMPLAINT**

81. As a proximate result of defendants' failure or refusal to identify Cooks as the subject of CWS warrant no. MA00209001, on July 25, 2007 Plaintiff was detained and arrested in Tennessee on the warrant, and extradited to California *solely* on the warrant. As a result, in July and August 2007, Plaintiff spent 34 days incarcerated on CWS warrant no. MA00209001.

82.   Plaintiff is informed and believes that even if he had been arrested in California on August 15, 2007, on misdemeanor CWS warrant no. LAA92R08966, he would *not* have been incarcerated in the LA County jail. Instead, per LA County jail policy he would have been released on an OR (assuming the misdemeanor warrant was the only basis for arresting him).

**Equitable Tolling / Accrual / Estoppel**

83. Up until December 20, 2014, Plaintiff did not have any facts suggesting or causing him to believe that CWS warrant no. MA00209001 had mis-identified its subject, or that the warrant's identifiers would be unlikely to match to the warrant's true subject should someone have occasion to check Cooks for warrants. Up until December 20, 2014, Plaintiff believed the name "Reggie Smith" and the 1962 birth date were identifiers County officials knew had been used by Cooks, and/or assigned to him. Thus, up until December 20, 2014, Plaintiff believed the initial cause of Plaintiff's identification as the warrant's subject was the unfortunate though unsurprising circumstances of Plaintiff and Cooks sharing the same and similar traditional identifiers.

84. On December 20, 2014, pursuant to court orders issued in this lawsuit in November and December 2014, Plaintiff's counsel received various criminal history reports for Cooks. One of the reports came from the CDOJ; others came from defendants. Contrary to what Plaintiff (and in particular his counsel) had believed, the reports established a high probability that in 1990, LASD investigator(s) had come up with *Plaintiff's* identifiers and *not* Cooks; and that by March 1991 defendants knew or should

00101486.WPD

**THIRD AMENDED COMPLAINT**

have known that "Reggie Smith" and the 1962 birth date would be unlikely to cause Cooks to be identified as the warrant' s subject.

85. The criminal history reports Plaintiff's counsel received December 20, 2014, also indicated that in March 1995, one or more LASD officials received official confirmation that Cooks could not be identified as the subject of CWS warrant no. MA00209001 based on the identifiers County officials used to identify the warrant's subject. This was the first indication Plaintiff had there was any evidence that (a) the warrant's identifiers do not match to the warrant's subject, and (b) defendants *knew* the identifiers do not match. Despite this knowledge, County officials left the warrant's identifiers unchanged up through sometime in 2010 (when County officials updated the CWS warrant to include *Plaintiff's* unique identifiers).

86. Plaintiff could not obtain these reports in case no. CV08-5756 GAF because his claims had been dismissed at the pleading stage and before any discovery could be conducted. Furthermore, Plaintiff could not plead the facts of the instant cause of action in that lawsuit because to do so – claiming that CWS warrant no. MA00209001 had misidentified its subject – would have subjected Plaintiff and his counsel to Rule 11 sanctions for making a legal claim without supporting facts. So instead, in CV08-5756 GAF Plaintiff limited his Fourth Amendment failure of particularity claim to one based on a failure to make the description in CWS warrant no. MA00209001 *more specific* by using biometric identifiers (CII, FBI and LA Main numbers) in addition to the supposedly correct (as counsel thought at the time) but hardly unique name and birth date.

87. In CV08-5756, in securing a dismissal with prejudice of Plaintiff's Fourth Amendment particularity claim, defendants exploited the fact that Plaintiff's claims in that case conceded CWS warrant no. MA00209001's identifiers were *not* false or incorrect, and made no claim that the warrant had incorrectly named the warrant's intended subject:

00101486.WPD

- "As long as an arrest warrant correctly names the person to be arrested (*and there is no allegation in the Second Amended Complaint that the warrants incorrectly name the warrant subjects*), the warrant is sufficiently particular under the Fourth Amendment." Doc. 25, filed 2/20/09 in CV08-5756 (1:27-28) (emphasis added);

- "All of the warrants on which Plaintiffs claim to have been arrested *correctly named the person whose arrest is sought*, and include additional, specific identifying information as well." Doc. 25, filed 2/20/09 in CV08-5756 (3:17-19) (emphasis added);

- "The Fourth Amendment does not require that any particular identifying information be included on an arrest warrant; *the warrant need only include a description sufficient to reasonably identify the arrestee, and the majority of courts have held that a warrant <u>correctly</u> naming the person whose arrest is sought is sufficient to satisfy this standard*." Doc. 25, filed 2/20/09 in CV08-5756 (4:7-11) (emphasis added);

- "*Plaintiffs do not allege that the warrants in question do not correctly name the warrant subjects, nor do they allege that the warrants contain descriptions insufficient to identify the true warrant subject*." Doc. 25, filed 2/20/09 in CV08-5756 (5:9-11) (emphasis added);

- "Here, of course, the warrants contained far more information than the *correct names* of the individuals to be arrested; they included dates of birth, addresses, and physical descriptions as well. *They are narrowly tailored and obviously sufficient to reasonably identify the subjects of the warrants; Plaintiffs do no (**and cannot**) contend otherwise*." Doc 44, filed 3/16/09 in CV08-5756 (2:27-3:3) (emphasis added).

88. For reasons stated in paragraphs 47, 49-50 *supra*, Plaintiff is informed and

-29-

**THIRD AMENDED COMPLAINT**

believes and based thereon alleges that when defendants made the above claims in CV08-5756 about CWS warrant no. MA00209001, defendants in fact knew the warrant had been verified to have *incorrectly* identified its subject Cooks, and that the warrant identifiers were *not likely* to result in Cooks being identified as the warrant's subject. Plaintiff is further informed and believes and based thereon alleges that defendants had actual or constructive notice that CWS warrant no. MA00209001 was using one or more identifiers that was *Plaintiff's* and *not* Cooks.

89. Furthermore, in the present case Plaintiff first sought in 2012 the criminal history reports Plaintiff's counsel eventually received December 20, 2014. Defendants refused to produce them in 2012 even though, from the face of the reports, defendants had to know just how probative the information contained therein was. Defendants forced Plaintiff to bring a motion to compel which was granted by Magistrate Judge Walsh in September 2012. But before defendants were obligated to produce the reports, defendants filed an appeal to the Ninth Circuit and, over Plaintiff's objection, obtained a stay on discovery. That discovery stay also caused the CDOJ to postpone production of Cooks' criminal history information recorded in the CDOJ database. Not until after Judge Feess lifted the discovery stay in October 2014 and after Judge Feess' denied defendants' Rule 72(a) motion challenging Magistrate Judge Walsh's September 2012 discovery order, did defendants produce, in December 2014, the criminal history reports defendants had. At about the same time, CDOJ produced its criminal history report on Cooks.

90. The only way Plaintiff could obtain Cooks' criminal history information was through court orders. As stated above, the County resisted all efforts to produce reports it had on Cooks' criminal history. Meanwhile, counsel for CDOJ informed Plaintiff's counsel that notwithstanding the subpoena Plaintiff served on the CDOJ, that agency cannot produce Cooks' criminal history. Thus Plaintiff had to first obtain a court order. See Stipulation filed 12/10/14 (doc. 84), and Magistrate Judge Walsh's 12/11/14 Order

00101486.WPD

(doc. 85), both filed in this case.

91. Therefore, this cause of action did not accrue until on or about December 20, 2014. *E.g., Winter v. United States*, 244 F.3d 1088, 1091 (9th Cir. 2001). Furthermore, Plaintiff is entitled to equitable tolling. *Estate of Amaro v. City of Oakland*, 653 F.3d 808 (9th Cir. 2011).

### FIFTH CAUSE OF ACTION

### (Due Process - *Gonzales v. Spencer*)

### (Plaintiff against defendants LASD, LA County, Does and Unnamed Attorney / Unnamed Law Firm)

92. Plaintiff restates and incorporates by reference the foregoing paragraphs as if each paragraph was fully set forth herein.

93. Pursuant to California law, the CDOJ maintains a person's criminal history (records of arrests, convictions, sentences, etc.) as reported to the CDOJ and when possible verified by fingerprints. California law requires that the CDOJ maintain criminal history records as confidential, and restricts the access and dissemination of a person's CDOJ criminal history. Accessing or releasing a person's criminal history in violation of procedures is a crime under California law. Finally, while California law permits the access and release of criminal history to serve a legitimate law enforcement function, the law does *not* permit access or release of a person's CDOJ criminal history because (a) a subject has sued a government entity or (b) a person's criminal history may advance a government entity's civil litigation interest. See Cal. Penal Code § 11105.

94. Plaintiff is informed and believes and based thereon alleges that at various times listed below, employees of defendant County violated Plaintiff's rights to due process under both state and federal law by failing to comply with all appropriate provisions of state law, including, but not limited to California Penal Code § 11105, and thereby are liable to Plaintiff under 42 U.S.C. § 1983:

-31-

00101486.WPD

A. December 15, 2011, at about 2:26pm, without lawful justification a County employee retrieved Plaintiff's CDOJ criminal history;

B. February 6, 2012, at about 4:04pm, without lawful justification a County employee retrieved Plaintiff's CDOJ criminal history;

C. April 25, 2012, at about 9:57am, without lawful justification a County employee retrieved Plaintiff's CDOJ criminal history;

D. September 11, 2012, at about 3:46pm, without lawful justification a County employee retrieved Plaintiff's CDOJ criminal history;

E. October 17, 2012, at about 9:43pm, without lawful justification a County employee retrieved Plaintiff's CDOJ criminal history;

F. November 12, 2012, at about 9:08am, without lawful justification a County employee retrieved Plaintiff's CDOJ criminal history;

G. November 12, 2012, at about 9:27am, without lawful justification a County employee retrieved Plaintiff's CDOJ criminal history;

H. November 12, 2012, at about 9:29am, without lawful justification a County employee retrieved Plaintiff's CDOJ criminal history;

I. November 14, 2012, at about 4:22pm, without lawful justification a County employee retrieved Plaintiff's CDOJ criminal history; and

J. March 7, 2013, at about 10:48am, without lawful justification a County employee retrieved Plaintiff's CDOJ criminal history.

95. Plaintiff is informed and believes and based thereon alleges that accessing Plaintiff's confidential criminal history was pursuant to a conspiracy involving County employees and Unnamed Lawyer and Unnamed Law Firm. The purpose of the conspiracy was to surreptitiously obtain confidential criminal history regarding Plaintiff in order to secure a litigation advantage for defendants County and LASD in Plaintiff's pending lawsuits against defendants. The wrongful acts violated Plaintiff's due process rights

00101486.WPD

under federal and state law, and Plaintiff's privacy rights (Cal. Const., Art. I §§ 1, 7, 13). Plaintiff is therefore entitled to sue under 42 U.S.C. § 1983. See *Gonzalez v. Spencer*, 336 F.3d 832 (9th Cir. 2003).

**Equitable Tolling / Accrual**

96. Plaintiff did not discover the facts of defendants' wrongful accessing of Plaintiff's CDOJ criminal history until January 9, 2015, when Plaintiff deposed CDOJ representatives pursuant to subpoena. Plaintiff was unable to depose them earlier because of the two year stay on discovery, described above. At the January 9 depositions, CDOJ representatives produced security or audit logs and testified the logs established that various LA County personnel had accessed and retrieved Plaintiff's criminal history, as stated above.

**SIXTH CAUSE OF ACTION**

**(False Imprisonment / Art. I § 13)**

**(Plaintiff against defendants LA County and Does)**

97. Plaintiff restates and incorporates by reference the foregoing paragraphs as if each paragraph was fully set forth herein.

98. Plaintiff's arrest and incarceration in July/August 2007 constituted a false imprisonment under both state law (*Sullivan v. County of Los Angeles*, 12 Cal.3d 710 (1974)) and the Cal. Const., Art. I § 13, proximately caused by LA County officials creating a CWS warrant record using identifiers that (a) were not known to have ever matched to Cooks, (b) in fact, did not match to Cooks despite Cooks being checked for warrants, and (c) defendants knew or should have known the identifiers for CWS warrant no. MA00209001, though not matching to Cooks, would and did match to others.

99. Plaintiff's January 27, 2011 arrest by LAPD officers was proximately caused by LA County updating CWS warrant no. MA00209001 in 2010 to include *Plaintiff's* unique identifiers, including his biometric identifiers (CII and FBI numbers), thus

00101486.WPD

insuring that Plaintiff and only Plaintiff would be arrested on the warrant.

100. Plaintiff could not prosecute this state law false imprisonment claim in CV08-5756 GAF (a lawsuit in which Plaintiff sought damages for his July/August 2007 incarceration) because the facts establishing that CWS warrant no. MA00209001 wrongly and incorrectly identified its intended subject, were not discoverable by Plaintiff until December 20, 2014, as alleged above.

101. On January 2, 2015, Plaintiff submitted a Cal. Gov't Code § 910 claim to LA County, seeking damages for the above wrongful acts. Defendant LA County has since denied the claim.

## PRAYER

WHEREFORE, Plaintiff prays judgment as follows:

**On the First Cause of Action:**

102. That the Court certify this claim pursuant to F. R. Civ. P. 23(b)(2) as a class action on behalf of a class of Plaintiffs composed of all persons whose names and/or physical descriptors are the same or similar to persons for whom warrants for arrest have been issued by Superior Court.

103. That the Court issue a declaration that defendants LA County and LASD's current practice in re-issuing arrest warrants violate federal and state law;

104. For a preliminary and permanent injunction commanding defendants LA County and LASD, and each of them, to:

    A. Record in CWS on warrant no. NVMA00209001, the biometric identifiers for suspect Smith, and data identifying Plaintiff Smith's by his biometric identifiers (FBI, CII, LA Main numbers) and that he is *not* the subject of this warrant;

    B. Record in CWS on warrants and in the databases in which the warrants are inputted, the subject's FBI, CII and LA Main numbers, if known;

-34-

00101486.WPD

C. Record in CWS the name, birthdate, and unique fingerprint-based identifiers ( FBI, CII and LA main numbers) of those persons known to have been *wrongfully* arrested on the warrant, and advising law enforcement officials not to arrest this person as the warrant's subject;

D. Train and instruct defendants' personnel that upon booking or taking custody of someone on a Superior Court warrant, the personnel must review the warrant's history to determine if there is a record of the arrestee having been previously booked on the warrant but cleared as *not* being the warrant's subject.

105. Attorneys' fees under 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1(h)

**On the Second and Third Causes of Action:**

106. That Plaintiff be awarded compensatory damages according to proof for injuries proximately caused by defendants' wrongful acts, but *not* damages for Plaintiff's July/August 2007 incarceration;

107. Attorneys' fees under 42 U.S.C. § 1988;

**On the Fourth, Fifth and Sixth Causes of Action:**

108. That Plaintiff be awarded compensatory damages according to proof for injuries proximately caused by defendants' wrongful acts;

109. Attorneys' fees under 42 U.S.C. § 1988, Cal. Civ. Proc. Code § 1021.5, and California's private attorney general doctrine;

///

///

///

///

///

///

///

-35-

00101486.WPD

**THIRD AMENDED COMPLAINT**

**On All Causes of Action:**

110. Costs of suit; and

111. Such other relief as the Court deems proper.

DATED: January 23, 2015

**DONALD W. COOK**
Attorney for Plaintiff

By_____

Donald W. Cook

00101486.WPD

**THIRD AMENDED COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the class he represents, demands a jury trial.

DATED: January 23, 2015

**DONALD W. COOK**
Attorney for Plaintiff

By_____
Donald W. Cook

-37-

00101486.WPD

**THIRD AMENDED COMPLAINT**