O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD LENARD SMITH, | ) Case No. CV 11-10666 DDP (PJWx) |
| Plaintiff, | ) **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND STRIKE THIRD AMENDED COMPLAINT** |
| v. | ) |
| COUNTY OF LOS ANGELES; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; Does 1 through 10, both their personal and official capacities, | ) [Dkt. Nos. 110, 111] |
| Defendants. | ) |

Presently before the Court is Defendants' Motions to Dismiss and Strike Plaintiff's Third Amended Complaint ("SAC"). (Dkt. Nos. 110, 111.) Having heard oral arguments and considered the parties' submissions, the Court adopts the following order.

**I.   BACKGROUND**

In 1991, a California state court issued, and Defendant Los Angeles Sheriff's Department ("LASD") recorded, a felony warrant for the arrest of a person then identified as "Reggie Lamar Smith" (later identified as "Robert Lee Cooks"). (TAC ¶¶ 45-49.) This warrant included a 1962 birth date which was not Cooks' own birth

date and was instead the birth date of Plaintiff, Reginald Lenard Smith. (Id. at ¶ 46.) This warrant, a felony no-bail warrant for a convicted fugitive, authorized extradition from any state. (Id. at ¶ 47.) Plaintiff alleges that when the warrant was created, Defendants had "constructive knowledge" that Cooks' birth name and his numerous aliases were almost all some variant of "Robert Cooks" rather than "Reggie Smith." (Id. at ¶ 48.) Plaintiff alleges that as early as 1995, LASD became aware that it had failed to properly identify Cooks during a warrant check because of the incorrect name and birth date. (Id. at ¶ 50.) Plaintiff alleges that in 1997, LASD incorrectly incarcerated a different Reginald Smith (not Plaintiff) under the warrant intended for Cooks.

In 2007, Plaintiff, whose name is Reginald Lenard Smith, was stopped by police in Tennessee for a minor traffic violation. (Id. at ¶ 52.) After a warrant check, Plaintiff was arrested by the Tennessee police under the warrant issued for Cooks. (Id.) Eleven days later, he was extradited to California, where he was held for thirteen days until a California court ordered his released because he was not the subject of the warrant. (Id.) Plaintiff alleges that he would not have been held and extradited were it not for the felony warrant. (Id. at ¶¶ 53, 82.) Plaintiff does not dispute that there existed a separate misdemeanor warrant that provided independent authority for Defendants to detain him in California. (Dkt. No. 111-2, Ex. C (Feb. 25, 2010 Order of Judge Feess) at 1-2.) But he does argue that, were it not for the felony warrant intended for Cooks, the LASD, pursuant to its own policy, would not have detained him in jail. (TAC, ¶ 82.) "[O]n August 22, 2007, the Superior Court issued an Order for Release with respect to the

2

misdemeanor warrant for which Plaintiff Smith was actually the subject." (Dkt. No. 111-2, Ex. C at 2, ¶ 4.) Plaintiff alleges that on August 22, 2007, an investigator for the district attorney determined that Cooks, the true subject of the warrant, was actually incarcerated in federal prison at the time. (TAC, ¶ 55.) A week later, on August 28, 2007, Plaintiff was finally released. (Id. at ¶ 56.)

Also on August 28, 2007, the state court re-issued the warrant. Plaintiff alleges that Defendants again created a record for the warrant that reflected his name and birth date, rather than the correct name and birth date for the true subject of the warrant. (Id. at ¶ 57.) Defendants also did not note in the record that Plaintiff had been exonerated in the warrant, nor did they note that Cooks was currently incarcerated. (Id. at ¶ 59.)

Plaintiff alleges that in 2010, Defendants updated the warrant with *Plaintiff's* Social Security number, driver's license number, biometric identifiers, and other identifying information. (Id. at ¶ 60.)

In 2011, Plaintiff was again arrested under the warrant intended for Cooks, this time by the Los Angeles Police Department ("LAPD"). (Id. at ¶ 61.) Plaintiff alleges that LAPD officers, in making the arrest, queried the County Warrant System ("CWS"), a warrant information database maintained by Los Angeles County. (Id.) Plaintiff alleges that the LAPD uses CWS because the County and Los Angeles Sheriff's Department ("LASD") advise local police that CWS is "the *only* practical means for determining if an arrestee has an outstanding Superior Court warrant." (Id.)

1    Plaintiff further alleges that failure to update the record
2 has proximately caused the United States Department of State to
3 deny his application for a passport, because the State Department
4 also relies on the erroneous warrant and/or CWS to check applicants
5 for outstanding warrants. (Id. at ¶ 65.)
6    Plaintiff alleges that since the 2011 arrest, Defendants have
7 removed his unique identifiers from the warrant record, but the
8 record continues to reflect his name and birth date rather than
9 Cooks'. (Id. at ¶ 66.)
10    Consequently, Plaintiff now sues for injunctive relief and
11 damages, for himself and a putative class of others similarly
12 situated, alleging constitutional violations under the Fourth and
13 Fourteenth Amendments and violation of Cal. Const. art. 1, § 13.
14 (Id. at ¶¶ 69-109.)

## II. LEGAL STANDARD

In order to survive a motion to dismiss for failure to state a claim, a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 55 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).

A court may strike any "redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f). "A 'redundant' matter consists of allegations that constitute a needless repetition of other averments . . . ." Wilkerson v. Butler, 229 F.R.D. 166, 170 (E.D. Cal. 2005). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded. 'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) rev'd as to other matters, 510 U.S. 517 (1994). Scandalous allegations are those "that cast a cruelly derogatory light on a party or other person." In re 2TheMart.com, Inc. Sec. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).

**III. DISCUSSION**

**A. Motion to Strike**

Defendants ask the Court to strike Plaintiff's Fourth, Fifth, and Sixth Causes of Action be stricken as exceeding the scope of the Court's leave to amend and, in the case of the Fifth, because it contains "scandalous" material. (Mot. Strike.)

"Rule 12(f) motions are generally disfavored." Allen v. Cnty. of Los Angeles, No. CV 07-102-R (SH), 2009 WL 666449, at *2 (C.D. Cal. Mar. 12, 2009). They are "generally not granted unless it is clear that the matter sought to be stricken could have no possible

5

bearing on the subject matter of the litigation." White v. Hansen, 2005 WL 1806367, *14 (N.D.Cal.2005) (internal quotation marks and citation omitted). District courts have been reluctant to strike allegations or claims in an amended pleading, even if they somewhat exceed the scope of the court's leave to amend, as long as the new allegations or claims are not "wholly specious" and do not cause the opposing party "undue prejudice." Sapiro v. Encompass Ins., 221 F.R.D. 513, 518 (N.D. Cal. 2004); Samuel v. Rose's Stores, Inc., 907 F. Supp. 159, 162 (E.D. Va. 1995) Plaintiff did exceed the scope of the leave to amend the complaint . . . . [H]owever, the changes in the complaint do not affect the substance of the claims against the Defendant.").

The Fourth Cause of Action, arising from the 2007 arrest, is somewhat beyond the scope of what the Court expected when it granted Plaintiff leave to amend his complaint. In the Second Amended Complaint, Plaintiff specifically stated that he "d[id] not seek damages arising from his July 27, 2007 arrest on warrant no. NVMA00209001." (SAC, ¶ 50.) And it was the new information about the entry of Plaintiff's information into Cooks' warrant that caused the Court to give leave in the first place – most of which, by Plaintiff's own account, was added to the warrant in 2010. (Dkt. No. 100, Jan. 16, 2015 Order, at 8:9-20; TAC at ¶ 60.) The addition of a claim based on the 2007 arrest is therefore unexpected. Nonetheless, the Court did grant Plaintiff leave to amend his "Fourth Amendment claim." (Dkt. No. 100, Jan. 16, 2015 Order, at 16:17-18.) The Fourth Cause of Action is a Fourth Amendment claim, and it is related to the claim as to the 2011 arrest, because if the warrant was faulty in 2007, that would make

6

the 2011 arrest even more problematic. Thus, the 2007 claim is not immaterial or impertinent to the 2011 claims. Plaintiff plausibly alleges that the information on which he bases his new claim was always in Defendants' hands, and yet not available to Plaintiff until recent discovery uncovered it, (TAC ¶¶ 78-80, 83-84, 89, 96, 100). If Plaintiff is correct, Defendants cannot claim to be prejudiced by the claim. Thus, the Court finds it more appropriate to deal with the Fourth Cause of Action on the 12(b)(6) motion, discussed <u>infra</u>.

For similar reasons, the Court declines to strike the Sixth Cause of Action. The claims for wrongful imprisonment and violation of the California Constitution are rooted in the same facts as, and bear on, the federal constitutional claims as to the 2011 arrest, and questions of surprise and prejudice would follow the same analysis.

The Fifth Cause of Action is, admittedly, unlike anything pled previously and far beyond the range of what the Court envisioned when it gave Plaintiff leave to amend in order to restate his Fourth Amendment claim. Nonetheless, in the interest of the Court's strong policy of deciding claims on the merits, and in order to avoid duplicative filings to arrive at the same place, the Court will deal with the Fifth Cause of Action on the 12(b)(6) motion as well.

The Motion to Strike is therefore denied in its entirety.

**B.   Motion to Dismiss: Fourth Cause of Action**

Plaintiff alleges, in his Fourth Cause of Action, that the warrant under which he was twice arrested was defective from the start, because Defendants knew (or should have known) that the true

7

subject's name was not Reggie Smith and that his birth date was not the same as Plaintiff's. (TAC, ¶¶ 41-43, 78-79.) Defendant argues that this claim is precluded as a matter of res judicata,[1] for two reasons. First, as a general matter, the district court and the Ninth Circuit have already held that the warrant was sufficiently particular to satisfy the Fourth Amendment. Second, the same courts have already held that Plaintiff cannot bring a claim because Defendants had alternate bases on which to hold Plaintiff – initially another warrant that was truly his, and later a valid court order.

**1. Preclusive Effect of Judgments on Plaintiff's Previous Fourth Amendment Claim**

"The preclusive effect of a federal-court judgment is determined by federal common law." Taylor v. Sturgell, 553 U.S. 880, 891 (2008). The Court therefore looks to the Supreme Court's definitions of issue and claim preclusion:

> Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination

---

[1] Terminology regarding relitigation of issues and claims can be confusing. Some courts use the terms "collateral estoppel" and "res judicata," respectively, while others use the terms "issue preclusion" and "claim preclusion," naming the two doctrines collectively "res judicata." The Court adopts the latter nomenclature, following a recent U.S. Supreme Court decision: "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as res judicata." Taylor v. Sturgell, 553 U.S. 880, 892 (2008)

8

```
            essential to the prior judgment, even if the issue recurs in
               the context of a different claim.
```
Id. at 892 (citations omitted) (internal quotation marks omitted). The two doctrines preserve the finality of judgments and "foster reliance on judicial action by minimizing the possibility of inconsistent decisions." Id. (brackets omitted) (internal quotation marks omitted).

To take issue preclusion first, it is obvious that the issue of the identifiers actually being false and unrelated to the true subject of the warrant was not "actually litigated and resolved" in the previous case. Judge Feess noted that "Plaintiffs do not allege that the warrants at issue did not correctly name the actual subjects. Additionally, all of the warrants contained additional descriptive information such as physical characteristics . . . ." (Dkt. No. 111-2, Ex. B at 16:12-14.) Similarly, the question presented to the Ninth Circuit was whether "the L.A. County defendants violated the Fourth Amendment's particularity requirement by not including the warrant subject's known biometric identifiers or full name on the warrant." Gant v. Cnty. of Los Angeles, No. 12-56080, 2014 WL 6613049, at *2 (9th Cir. Nov. 24, 2014). The particular issue Plaintiff raises has not been litigated before.

Nonetheless, the *claim* would be precluded, because previously litigated, except that Plaintiff alleges that Defendants's misrepresentations in the previous litigation defeat claim preclusion, citing to Western Sys., Inc. v. Ulloa, 958 F.2d 864, 871-72 (9th Cir. 1992) ("Ignorance of a party does not . . . avoid

9

the bar of res judicata unless the ignorance was caused by the misrepresentation or concealment of the opposing party.").

Plaintiff plausibly alleges that Defendants had information – either in 1991 or in 1995, but certainly by the time his claim was initially litigated – that would have supported his claim, and that Defendants made representations to Plaintiff, his co-plaintiffs, and the courts that concealed that information. See Part I, supra; Opp'n at 7-9. It may turn out, of course, that Plaintiff is wrong and Defendants' representations were not false or were innocently made.[2] Nonetheless, for purposes of deciding a 12(b)(6) motion on grounds of claim preclusion, the allegations suffice.[3]

## 2. Independent Authority to Hold Plaintiff

The Ninth Circuit panel that heard Plaintiff's original appeal affirmed the district court's conclusion that "the L.A. County defendants had lawful authority to detain Smith from August 15, 2007 to August 22, 2007 based on a misdemeanor warrant actually

---

[2] The Western court cited to Restatement (Second) of Judgments § 26, comm. j (1982), which notes that the exception to claim preclusion applies even "when the defendant was not fraudulent, but by an innocent misrepresentation prevented the plaintiff from including the entire claim in the original action."

[3] Defendant argues that the claim should be precluded anyway, because Plaintiff had two months of discovery in the prior case in which he could have uncovered this information. (Reply ISO Mot. Dismiss at 3.) Of course, if Defendants misled Plaintiff as to the validity of the contents of the warrant, he would have had no reason to conduct discovery on that point. Defendants also argue that their statements were not misleading because they were "relying on" Plaintiff's "tacit admission" that the true subject of the warrant was correctly identified. (Id. at 3 n.3.) In other words, Defendants argue that even if *they* misnamed the subject of the warrant, and knew that *they had done so*, it was not misrepresentation to claim that the warrant named him correctly, because *Plaintiff* said the same thing (even though Plaintiff relied on Defendants' records in coming to that conclusion). That is an unorthodox approach to the idea of misrepresentation, and not one the Court is prepared to adopt.

10

meant for him, and from August 22, 2007 until he was released on August 28, 2007 based on a valid court order." <u>Gant v. Cnty. of Los Angeles</u>, No. 12-56080, 2014 WL 6613049, at *2 (9th Cir. Nov. 24, 2014). Thus, the circuit court concluded, it was not a violation of due process for LASD to hold Plaintiff from August 15 through August 28.

The main question is therefore whether Plaintiff can now assert *Fourth* Amendment liability against Defendants, notwithstanding the Ninth Circuit's holdings about independent authority. Plaintiff argues that he can, for two reasons.

First, Plaintiff alleges that neither Tennessee officials nor California officials were aware of the misdemeanor warrant when Plaintiff was arrested and detained in Tennessee, nor when he was extradited.[4] (Opp'n at 14:5-15.) Thus, that warrant cannot provide authority for his detention prior to his extradition to California.

Second, Plaintiff argues that even once he was transferred to LASD custody in California on August 15, 2007, the misdemeanor warrant is "irrelevant," because had it not been for the felony warrant, he would have been released immediately pursuant to LASD policy. (Opp'n at 14:16-25.) Thus, the felony warrant proximately caused his detention, even if there was an independent authority for his detention.

The Ninth Circuit's holding in <u>Gant</u> was in the Fourteenth Amendment context rather than addressed specifically to the current

---

[4] For that matter, it is not clear that a misdemeanor warrant in California would have provided Tennessee police with authority to detain Plaintiff, even if they had known about it. Neither party has briefed this point.

11

Fourth Amendment claim; thus, the Court must still address Fourth Amendment liability.  Nonetheless, the same logic would seem to apply, at least as to detaining Plaintiff on the misdemeanor warrant.  That detention was not an unreasonable seizure, in violation of the Fourth Amendment, *regardless* of how Plaintiff ended up in LASD's hands,[5] because the misdemeanor warrant itself did not result from any alleged wrongdoing on Defendants' part.[6]

A closer question is whether Fourth Amendment liability is cut off by the judge's order authorizing LASD to detain Plaintiff in order to determine whether he was the subject of the warrant.  On the one hand, it is true that the Court will "apply traditional tort law principles" to determine whether Defendants are liable for

---

[5] Although the parties do not brief this point directly, numerous courts have held that seizure on an outstanding warrant discovered in the course of an otherwise unlawful arrest or detention is not a Fourth Amendment violation.  United States v. Green, 111 F.3d 515, 521 (7th Cir. 1997) ("It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an occupant who is found to be wanted on a warrant . . . ."); State v. Moralez, 297 Kan. 397, 415 (2013) ("[T]he preceding unlawful detention does not taint the lawful arrest on the outstanding warrant . . . ."); State v. Bailey, 356 Or. 486, 503-04 (2014) ("Where a person's identity is made known to the police during an unlawful detention, and he or she is determined to be the subject of a valid arrest warrant, the police may lawfully arrest the person . . . ."); People v. Murray, 312 Ill. App. 3d 685, 691-92 (2000) ("It would be illogical and nonsensical for us to hold that once the police illegally stop an automobile, they can never arrest an occupant who is found to be wanted on a warrant."); State v. Gardner, 2011-Ohio-5692, ¶ 33 aff'd 984 N.E.2d 1025 ("None of this means that a defendant cannot be arrested for the outstanding warrant simply because his name was discovered as a result of an unlawful stop.").

[6] It is also immaterial what Defendants' usual policy was with regard to misdemeanor warrants; the question is whether the detention was reasonable.  "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'"  Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006).  Holding someone pursuant to a valid arrest warrant is objectively reasonable, even if not customary at a particular jail.

12

injuries that are a "natural consequence" of their alleged acts regarding the warrant. <u>Bravo v. City of Santa Maria</u>, 665 F.3d 1076, 1089 (9th Cir. 2011). On the other hand, when a judge exercises independent judgment and issues an order based on her own judgment, that is ordinarily a superseding cause that breaks the chain of causation – again, according to traditional tort principles. <u>Galen v. Cnty. of Los Angeles</u>, 477 F.3d 652, 663 (9th Cir. 2007).

There is an exception to the "superseding cause" rule, however. When a defendant has "deliberately or recklessly misled" the judicial officer, her independent judgment is undermined, and the proximate cause chain is not broken. <u>Id.</u> at 664. Thus, if Defendants deliberately or recklessly represented to the judge that the name and birth date on the warrant record correctly described the warrant's true subject, knowing that it did not, the chain of harms attributable to the allegedly false warrant record is not broken, notwithstanding that due process was held to be satisfied as to the actual decision to detain Plaintiff.[7]

This exception is narrow. It does not call into question the due process of the state court proceedings. The Court wishes to stress that it does *not* suggest that the LASD deputies who appeared before the state court and/or held Plaintiff under a court order made misrepresentations or misled the state court. Rather, what

---

[7] "If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded." <u>Tatum v. Moody</u>, 768 F.3d 806, 819 (9th Cir. 2014) (quoting <u>Jones v. City of Chicago</u>, 856 F.2d 985, 994 (7th Cir. 1988)).

13

prevents the state court's order from cutting off the chain of liability is that Defendants, according to Plaintiff's allegations, deliberately or recklessly created a misleading warrant record that the state court relied on in good faith in issuing its order. Although Plaintiff has not specifically pled that the state judge relied on the warrant, that reliance may be inferred from the fact that the judge's order was issued to authorize holding Plaintiff "while it was determined that [he] was not the subject of a felony sexual battery warrant *that appeared in the computerized database.*" Gant v. Cnty. of Los Angeles, No. 12-56080, 2014 WL 6613049, at *2 (9th Cir. Nov. 24, 2014) (emphasis added).

Therefore, while detaining Plaintiff under the misdemeanor warrant from August 15 to August 22, 2007 was reasonable, Defendants can still be held liable for Plaintiff's detention in Tennessee, his extradition, and his detention pursuant to a court order after August 22, 2007.

**C.   Motion to Dismiss: Sixth Cause of Action**

Plaintiff asserts a cause of action under state law, apparently for both false imprisonment and violation of the state constitution's Fourth Amendment analogue, Cal. Const. art. 1, § 13. Defendants argue that Plaintiff cannot bring an action for false imprisonment because it is precluded by previous judgments and that he cannot bring an action under art. 1, § 13 because that provision of the California Constitution is not self-executing.

As to false imprisonment, the Court holds that Plaintiff is not precluded from stating his claim for false imprisonment for the

same reasons he is not precluded from stating a Fourth Amendment claim.  See Part III.B., supra.[8]

As to art. 1, § 13, the Court recognizes that there is a split of authority as to whether the provision is "self-executing," in the sense of providing a freestanding cause of action for damages. See OSJ PEP Tennessee LLC v. Harris, No. CV 14-03741 DDP MANX, 2014 WL 4988070, at *6 (C.D. Cal. Oct. 7, 2014) (discussing the split among federal district courts in California).  However, at least three cases in the Central District have held that there is a constitutional tort cause of action for damages available under § 13.  Id. at *6-*7; Millender v. Cnty. of Los Angeles, No. CV 05-2298 DDP RZX, 2007 WL 7589200 at *1, *39 (C.D.Cal. Mar.15, 2007) rev'd in part, 472 F. App'x 627 (9th Cir.2012); Smith v. County of Riverside, No. EDCV 05-00512 VAP, at *1, *16-18 (C.D.Cal. May 16, 2006).  The Court continues to recognize that cause of action for the reasons set forth in those cases.

**D.   Motion to Dismiss: Fifth Cause of Action**

Plaintiff's Fifth Cause of Action, however, cannot be sustained.  First, it is significantly outside the scope of the Court's order permitting amendment *related to the Fourth Amendment claim*.  (Dkt. No. 100 at 16:18-19.)  Second, Plaintiff asserts that some sort of "due process" violation has occurred, but does not explain exactly what the violation is.  He appears to pin his claim on Defendants' alleged violation of a California statute, Cal. Penal Code § 11105, which limits disclosure of a person's "state

---

[8] For the reasons stated above, he is also not prevented from bringing his claim by the independent authority provided by the misdemeanor warrant, except for the week between August 15 and August 22, 2007, when he was held pursuant to that warrant.

summary criminal history information." But "a state's violation of its own laws does not create a claim under § 1983." <u>Rector v. City & Cnty. of Denver</u>, 348 F.3d 935, 947 (10th Cir. 2003). "[T]he state law at issue must provide more than merely procedure; it must protect some substantive end" – that is, it must "create a protected liberty interest." <u>Bonin v. Calderon</u>, 59 F.3d 815, 842 (9th Cir. 1995) (internal quotation marks omitted). Thus, Plaintiff must identify a substantive liberty interest created or protected by the statute. Additionally, the state law must contain "explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met." <u>Id.</u> (internal quotation marks omitted).

Presumably the substantive interest at stake is an interest in informational privacy in the contents of the criminal history. Plaintiff appears to argue that § 11105 acts to protect the privacy interest created by Art. 1, § 1 of the California Constitution. (TAC, ¶ 95.) In this, he is likely correct. "The constitutional provision for privacy is self-executing in creating an enforceable right[,] and the statutory scheme restricting access to criminal history records imposes a duty enforced by sanctions on public officials to prevent unauthorized disclosure." <u>Craig v. Mun. Court</u>, 100 Cal. App. 3d 69, 76 (Ct. App. 1979) (citation omitted). But this means that the substantive right is created by Art. 1, § 1, and *not* by the statutory language of § 11105. Art. 1, § 1 does not contain "explicitly mandatory language" specifying the outcome to be reached if the right to privacy is protected as to criminal history records. Thus it remains an open question whether the process created by § 11105 is congruent with the process due under

16

the federal Constitution to protect the California state law right to privacy.

The Court is unable to find a case in which a plaintiff rested a § 1983 claim on a violation of § 11105, and Plaintiff provides no citation to any such case. Instead, Plaintiff analogizes to Gonzalez v. Spencer, in which the Ninth Circuit allowed a § 1983 claim to proceed that was grounded in a state statute protecting *juvenile* records from disclosure. 336 F.3d 832, 835 (9th Cir. 2003) abrogated as to other matters by Filarsky v. Delia, 132 S. Ct. 1657 (2012). But Gonzalez may not be able to support the weight Plaintiff wants it to bear. See Ismail v. Fulkerson, No. SA CV 10-00901-VBF, 2014 WL 3962488, at *11 (C.D. Cal. Aug. 12, 2014) ("Gonzalez did not address or definitively determine the existence or scope of any constitutional informational privacy right, and . . . has very limited precedential value."); see also Rigsby v. Cnty. of Los Angeles, 531 F. App'x 811, 812 (9th Cir. 2013) (Gonzalez did not clearly establish privacy rights as to access of records by social workers or disclosure of records to third parties).[9] The text of Gonzalez itself suggests that the constitutional right assumed in that case is limited to juvenile court records.[10] Additionally, in Gonzalez, the statute at issue required a court order before records could be disclosed, which implicates

---

[9] Pursuant to Ninth Circuit Rule 36-3, the Court cites to Rigsby as persuasive rather than precedential authority.

[10] Gonzalez, 336 F.3d at 835 ("[C]onstitutional and prudential considerations suggest that courts should carefully assess any attempt to compel disclosure of confidential *juvenile court* files.") (brackets omitted) (emphasis added) (quoting 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5428, at 817 (1980)).

17

1  procedural due process to a greater degree than a statute, like §
2  11105, that gives state authorities broad authority to disclose the
3  record to a vast number of people for almost any legitimate
4  purpose.  Gonzalez therefore does not, by itself, compel a finding
5  that violation of § 11105 is a due process violation actionable
6  under § 1983.
7       Even assuming that a violation of § 11105 could be a federal
8  due process violation, Plaintiff's pleading is inadequate to show
9  that there has been such a violation.  The specific facts Plaintiff
10 pleads show only that unnamed "County employees" accessed his
11 criminal history on certain dates between December, 2011 and March,
12 2013.  Plaintiff alleges that these acts were taken "pursuant to a
13 conspiracy involving County employees and Unnamed Lawyer and
14 Unnamed Law Firm . . . to secure a litigation advantage for
15 defendants."  (TAC, ¶ 95.)  But "a naked assertion of conspiracy,"
16 without at least *some* nonconclusory fact showing an agreement to
17 act together, is insufficient to state a claim.  Bell Atl. Corp. v.
18 Twombly, 550 U.S. 544, 557 (2007).  Moreover, although Plaintiff
19 asserts that "the law does *not* permit access or release of a
20 person's CDOJ criminal history because . . . a subject has sued a
21 government entity," (TAC, ¶ 93), the text of § 11105 states that
22 the records may be released to a variety of officials "if needed in
23 the course of their duties."  Cal. Penal Code § 11105(b).
24 Plaintiff's pleading at this point does not eliminate the "obvious
25 alternative explanation" that County employees accessed his records
26 for some purpose in the course of their official duties.  Ashcroft
27 v. Iqbal, 556 U.S. 662, 682 (2009).
28

The Court therefore finds that Plaintiff has not adequately stated a claim for a due process violation based on the violation of Cal. Penal Code § 11105.

**IV. CONCLUSION**

The Court DENIES the motion to strike in its entirety. The Court GRANTS the motion to dismiss Plaintiff's Fifth Cause of Action. However, the Court dismisses the claim without prejudice. The Court GRANTS the motion to dismiss Plaintiff's Fourth and Sixth Causes of Action inasmuch as they apply to the week of August 15 to August 22, 2007, but DENIES the motion otherwise.

IT IS SO ORDERED.

Dated: March 25, 2015

DEAN D. PREGERSON
United States District Judge