O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD LENARD SMITH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF LOS ANGELES; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; Does 1 through 10, both their personal and official capacities,<br><br>　　　　　Defendants.<br>_____ | Case No. CV 11-10666 DDP (PJWx)<br><br>**ORDER RE DEFENDANT BARBARA FRYER'S MOTION TO DISMISS**<br><br>[Dkt. No. 147] |

    Presently before the Court is Defendant Barbara Fryer's motion to dismiss claims in Plaintiff's Fourth Amended Complaint ("FAC") as to her. Having heard oral arguments and considered the parties' submissions, the Court adopts the following order.

**I.　BACKGROUND**

    The facts of this case have been laid out in several previous orders and need not be recited in detail. (See, e.g., Dkt. No 136.) Briefly, in 1991, Robert Lee Cooks was convicted of sexual battery under the name "Reggie Lamar Smith"; he then failed to appear for sentencing. (FAC, ¶¶ 45-46.) A bench warrant was

issued against him using identifiers (name, birth date, and general physical description) actually belonging to Plaintiff Reginald Lenard Smith.  (Id. at ¶ 47.)  Plaintiff has subsequently been detained twice on Cooks' warrant; he brings this action under 42 U.S.C. § 1983 for alleged constitutional violations by the entity defendants and, now, Ms. Fryer.

Plaintiff alleges that Ms. Fryer contributed to the constitutional violations because she investigated the case and generated the identifiers – Plaintiff's identifiers – that were added to the Cooks warrant.  (Id. at ¶¶ 41, 47.)  Plaintiff alleges that Fryer "knew or should have known" at the time that "there was *no* credible evidence that Plaintiff's identifiers belonged to, or had been used by, the suspect Cook."  (Id. at ¶ 42.)  Specifically, Plaintiff alleges that Fryer (1) "knew" the victim who provided the name "Reggie Smith" during the investigation was "not credible," (2) "knew or should have known" that Plaintiff had completed a background investigation as part of an LASD hiring process a few months prior to the investigation, and that background check "established" that Plaintiff was not the black male who was the subject of the investigation, and (3) Fryer "probably knew" that the identifiers she discovered in a computer search "actually belonged to another person knew was *not* the suspect."  (Id.)

Plaintiff further alleges that Fryer learned in 1995 that "the very limited name and incorrect birth date information LASD had used to describe the subject of" the warrant had been insufficient to identify Cooks when law enforcement officials ran a warrant check on him.  (Id. at ¶ 51.)  Fryer allegedly took no steps in

2

1995 to revise the outstanding warrant to more accurately identify Cooks as the true subject of the warrant.

## II. LEGAL STANDARD

In order to survive a motion to dismiss for failure to state a claim, a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 55 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).

## III. BACKGROUND

### A. Quasi-Judicial Immunity

Defendant argues that she has absolute "quasi-judicial immunity" from suit for her acts or omissions in this matter, because Plaintiff's arrests were made under a bench warrant issued by the Superior Court and because Plaintiff has not "allege[d] any meaningful causal link between" Fryer's acts or omissions and the judge's decision to issue the warrant with the incorrect identifiers.  (Mot. Dismiss at 4, 6-7.)

Quasi-judicial immunity is an absolute immunity from suit for court officials like grand jurors and prosecutors who "exercise a discretionary judgment on the basis of evidence presented to them." Imbler v. Pachtman, 424 U.S. 409, 423 n.20 (1976).  It may also

3

extend to subordinates of a judge, like clerks, "when they perform tasks that are an integral part of the judicial process." <u>Mullis v. U.S. Bankr. Court for Dist. of Nevada</u>, 828 F.2d 1385, 1390 (9th Cir. 1987). Defendant cites to no authority, nor is the court aware of any, extending absolute immunity to law enforcement officials who, in the course of their investigative duties, provide information to the court. On the contrary, it is well-established that an officer seeking a warrant from the court has only qualified immunity and is *not* equivalent to a quasi-judicial figure like a prosecutor. <u>Malley v. Briggs</u>, 475 U.S. 335, 342-43 (1986). A fortiori, an investigator who merely provides information to the court on which a warrant is based, and is therefore performing a function even less "integral" to the judicial process, enjoys only qualified immunity for her actions.

**B.   Qualified Immunity**

Under the doctrine of "qualified immunity," "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). To hold an official liable for a constitutional violation, the court must conclude both that there was a constitutional violation and that the right violated was clearly established. <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009). The court may address either prong first if one element or the other is clearly not satisfied, but ordinarily the court will determine the question of the constitutional violation first. <u>Id.</u> at 236. Indeed, if there is no constitutional violation on

4

Plaintiff's facts, qualified immunity is largely irrelevant; the complaint will be dismissed for failure to state a claim.

**1.   Whether Plaintiff States a Claim for a Fourth Amendment Violation in 1991**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. As the Court has already held in this case, a law enforcement officer or agency that deliberately or recklessly misleads a court may be held responsible for the outcome of the court's actions in material reliance on that information. (Dkt. No. 136 at 12-14 (citing Galen v. Cnty. of Los Angeles, 477 F.3d 652, 664 (9th Cir. 2007).) This rule often comes up in the context of an officer directly seeking a warrant. Malley, 475 U.S. at 345-46 (an officer violates the Fourth Amendment, and may be subject to suit, if "a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause."). However, liability for a Fourth Amendment violation caused by an investigator's misrepresentations is not limited to the context of an officer directly seeking a warrant. See, e.g., Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002) ("[A] coroner's reckless or intentional falsification of an autopsy report that plays a material role in the false arrest and prosecution of an individual can support a claim under 42 U.S.C. § 1983 and the Fourth Amendment.").

Deliberately or recklessly providing false information to the court can therefore be a Fourth Amendment violation if it causes an

infirm warrant to be issued and a plaintiff is arrested on that warrant.  In this case, assuming Plaintiff's facts as stated, the warrant could be found to be infirm.  "A warrant for the arrest of a person charged with a crime must truly name him, or describe him sufficiently to identify him."  <u>Gant v. Cnty. of Los Angeles</u>, 772 F.3d 608, 615 (9th Cir. 2014) (brackets omitted) (citing <u>West v. Cabell</u>, 153 U.S. 78, 85 (1894)).  As it is alleged that the warrant in this case did not truly name Robert Lee Cooks, and as it is further alleged that the warrant actually had *Plaintiff's* birth date rather than Cooks', the warrant (as alleged) did not describe Cooks sufficiently to identify him.  Additionally, a reasonable officer in Defendant's position would know that identifiers provided to the court may be (and often are) used in bench warrants.  Finally, Plaintiff alleges that "the prosecutor and the court relied on the CDOJ and DMV identifiers defendant Fryer generated as stated above."[1]  (FAC, ¶ 43.)

---

[1] Defendant argues that Plaintiff was required to plead that "the Superior Court did not have access to other identifying information about Cooks which may have differed from the information Fryer obtained (such as information Cooks provided to law enforcement at the time he was booked)." (Reply at 1.)  That is not correct, for two reasons.  First, a plaintiff is not required, at the pleading stage, to specifically disclaim every fact that might possibly undermine his claim.  Plaintiff has pled his theory of the case.  He is not required to anticipate Defendant's theory.  Second, even if the Superior Court had access to other information, if it relied on Defendant's allegedly false information, that reliance still formed the basis for the court's decision.  In many cases where an officer misleads the court, there will be other, possibly contradictory evidence.  <u>See, e.g.</u>, <u>Galbraith</u>, 307 F.3d 1119, 1121-22, 1126 (9th Cir. 2002) (coroner who ruled out suicide in a murder case held liable for Fourth Amendment violation for false autopsy report, although there was also a police report indicating the death likely was a suicide).  The question is not whether the court weighed competing facts, but whether its independent judgment was undermined by the inclusion of false statements.  <u>Smiddy v. Varney</u>, 665 F.2d 261, 266-67 (9th Cir.
(continued...)

The question, then, is whether Defendant Fryer's part in the creation of the allegedly infirm warrant was deliberate or reckless. Recklessness in this context means reckless disregard for the truth. Hervey v. Estes, 65 F.3d 784, 788 (9th Cir. 1995). Thus, the standard appears to be similar to the standard for malice in defamation cases, where recklessness may be demonstrated either by a showing that the defendant actually entertained serious doubts about the truth of her statement or by more circumstantial evidence, "such as absence of verification, inherent implausibility, obvious reasons to doubt the veracity [or] accuracy of information, and concessions or inconsistent statements by the defendant." Herbert v. Lando, 441 U.S. 153, 210 (1979) (Marshall, J., dissenting) (citing St. Amant v. Thompson, 390 U.S. 727, 732 (1968)); see also United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002) (applying the defamation standard to warrant affidavits).

Plaintiff asserts the following: (1) Defendant searched law enforcement databases on Plaintiff's name, apparently because Cooks had used the name "Reggie Smith," and then attributed Plaintiff's date of birth, driver's license number, and "CII number" to Cooks in her report; (2) Defendant knew that the alleged victim in Cooks' case who provided the name "Reggie Smith" was not credible, because she had lied to investigators, including about her knowledge of Cooks' identity; (3) that Defendant "knew or should have known" of an employment-related background investigation of Plaintiff that

---

[1](...continued)
1981), overruled as to other matters by Beck v. City of Upland, 527 F.3d 853, 865 (9th Cir. 2008).

7

definitively would have shown he was not Cooks; and (4) that Defendant "probably knew" that the identifiers she found in her computer search belonged to someone other than Cooks. (FAC, ¶ 41-42.)

The Court analyzes Plaintiff's allegations by setting aside those that are merely conclusory recitations of the elements of the alleged constitutional violation, which are not entitled to a presumption of truth, and then asking whether what remains is sufficient to state a claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 680-81 (2009). However, the court does not "reject . . . allegations on the ground that they are unrealistic or nonsensical," but only because they are conclusorily stated. Id.

Plaintiff's allegation that Defendant "probably knew" that the identifiers she retrieved during her computer search belonged to someone other than Cooks suffers from two flaws. First, it is not clear what legal standard "probably knew" meets. If the Court interprets that phrase to mean that Defendant *should* have known that she had the wrong identifiers, that is not sufficient to prove recklessness, because "should have known" is a negligence (i.e., reasonable person) standard, and "[o]missions or misstatements resulting from negligence or good faith mistakes" do not suffice to meet the standard under the Hervey/Galbraith/Galen line of cases. Ewing v. City of Stockton, 588 F.3d 1218, 1224 (9th Cir. 2009). Second, assuming that "probably knew" means that she must have *actually* known, the allegation veers toward a conclusory recitation of the elements, since the alleged constitutional violation is that Defendant knew the information was false (as to Cooks), yet placed it before the Superior Court.

8

1    Plaintiff's allegation regarding the employment background
2 check likewise supports only an inference of negligence. The fact
3 that Defendant "knew or should have known" that Plaintiff applied
4 for employment with the LASD, and that there was a relevant
5 background investigation file available, does not mean that she *did*
6 know any of that, or even that she entertained serious doubts that
7 she had the right man's identifiers. Nor, if she did not actually
8 know about the application and the background investigation, can it
9 be said that she know of an obvious reason to doubt the veracity or
10 accuracy of the identifiers she found.
11    On the other hand, if Defendant actually knew that the alleged
12 victim in the Cooks case was so lacking in credibility that even
13 her statement of her attacker's name was, by itself, inherently
14 implausible, then searching for identifiers on that name and
15 providing it to the court could have been reckless. Plaintiff
16 alleges that Defendant knew, at the time she made her search, that
17 the alleged victim "had tried to conceal her knowledge of Cooks'
18 identity." (FAC, ¶ 42.) That knowledge on Defendant's part could
19 support an inference that the victim's identification of Cooks as
20 "Reggie Smith" was inherently implausible, causing Defendant to
21 entertain serious doubts as to the accuracy of the identifiers she
22 obtained.
23    Additionally, apart from the question of what Defendant
24 actually knew or suspected at the time, her actions as alleged by
25 Plaintiff themselves could support a finding of recklessness. To
26 search a database on a very common last name and a reasonably
27 common first name, and to conclude, with no additional
28 corroboration, that a match on those names must be the person in

9

question, and to then provide a court with that person's date of birth – perhaps the most important identifier after the suspect's name – could be construed as acting in the "absence of verification," when there are "obvious reasons to doubt the . . . accuracy of information." Lando, 441 U.S. at 210 (Marshall, J., dissenting) (citing St. Amant, 390 U.S. at 732).

Finally, as a policy matter, the Court notes that in Fourth Amendment law, "there is no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails." Terry v. Ohio, 392 U.S. 1, 21 (1968); see also Winston v. Lee, 470 U.S. 753, 763 (1985) ("Our inquiry therefore must focus on the extent of the intrusion on respondent's privacy interests and on the State's need for the evidence."). The invasion entailed by formal arrest is quite serious indeed. Rabin v. Flynn, 725 F.3d 628, 637 (7th Cir. 2013) (Rovner, J., concurring) (noting that reasonableness depends on the degree of restraint imposed and that arrest and imprisonment are a greater form of restraint that temporary handcuffing or a Terry stop). A momentary misidentification by a police officer during a stop on the street will not ordinarily result in serious deprivation of liberty and can be quickly corrected. A positive misidentification in this sort of background check, however, is both unlikely to be challenged or corrected and the potential foundation for a serious intrusion on the personal liberty of the individual – as the undisputed facts of this case show. Providing a court with the factual basis for an arrest warrant is therefore a context in which

the "absence of verification" and the "obvious reasons to doubt" the accuracy of the information matter significantly.

Thus, although Plaintiff's factual allegations suffer some defects, they are sufficient to plausibly state a claim for relief.

**2.   Effect of Modification of Warrant Record in 1995**

Plaintiff alleges that "LA County Defendants, including defendant Fryer, did *nothing* to further identify Cooks as the subject of [the] warrant" after being informed by law enforcement officials in 1995 that it did not adequately describe him. Defendant argues that this is factually incorrect, and that the warrant record *was* updated in 1995 to include Cooks' name, inmate number, location, and "CII" and FBI numbers, as reflected in an exhibit lodged under seal in a previous round of motions. (Reply at 7 (citing Dkt. No. 93).)

Defendant's argument is raised for the first time in her Reply. "The district court need not consider arguments raised for the first time in a reply brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007). In a sense, the issue of the 1995 revision was raised before in the motion to dismiss the Second Amended Complaint. (Dkt. No. 86.) Nonetheless, there are good reasons not to address it here.

First, the previous motion was aimed at a different operative complaint, with different defendants. The arguments Plaintiff made in opposition to the entity Defendants' argument at that time may not be fully applicable to Defendant Fryer, or, alternatively, there might be different arguments, not raised at that time, that are relevant to Defendant Fryer. Thus Plaintiff has not had an opportunity, on *this* operative complaint and with regard to *this*

11

Defendant, to adequately present arguments in opposition to Defendant Fryer's argument regarding the alleged 1995 revisions.

Second, it is true that when an official provides false information that creates a Fourth Amendment violation, a later good faith attempt to prevent the false information from being used can mitigate or eliminate the official's liability. Stoot v. City of Everett, 582 F.3d 910, 926 (9th Cir. 2009). Plaintiff here has alleged that Defendant Fryer took no such action. (FAC, ¶ 51.) Defendant points the Court to an exhibit suggesting that someone (not necessarily Defendant) took action to update the warrant, although, notably, *not* suggesting that anyone took action to remove allegedly false and confusing information, such as Plaintiff's name as the primary name of the subject and Plaintiff's date of birth.[2]

The question of the effect of the alleged 1995 revisions thus appears to be a fact-intensive one. In the opposition to the motion to dismiss the Second Amended Complaint, for example, Plaintiff argued that law enforcement officials search for identifiers by field and would not necessarily be alerted to the remarks section allegedly added to the record in 1995. (Dkt. No. 95 at 14-15.) Plaintiff also argued that the record has been altered, apparently more than once, between 1995 and 2012, when the

---

[2] Defendant points out that she did not have the authority to modify the underlying warrant, which was created by the Superior Court. (Reply at 7.) But Defendant cites no authority to show that she could not adjust the fields of the warrant *record* in the County's database to more accurately identify the true subject of the warrant, perhaps keeping "Reggie Smith" as an AKA. (Indeed, the legal relationship between Superior Court warrants and the County's database remains somewhat obscure to the Court.) And assuming she lacks the authority to adjust the fields of the record, she does not explain why she could not have requested that the Superior Court modify the underlying warrant.

copy Defendants present to the Court was generated, making it difficult to know what information a law enforcement official would have seen in 2007 or 2011, when Plaintiff was arrested. (Id.) Finally, Plaintiff pointed to his two arrests as prima facie evidence that the alleged revisions were in any event ineffective. (Id.) Although the Court does not consider these arguments as to the present motion, they do suggest two things: this issue should not be resolved when Plaintiff has not had a chance to respond, and these arguments are likely better dealt with at the summary judgment phase, on a complete factual record.

**3.   Whether the Right at Issue Was Clearly Established**

The question of whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted).

The Court finds that a reasonable official would understand that recklessly or knowingly providing false information to a court is unlawful and that a warrant which names or otherwise identifies someone other than its true subject is constitutionally deficient.[3]

---

[3] Note that this is not the same as saying that a warrant that correctly identifies its true subject, but *incidentally* identifies another person as well, is infirm under the Fourth Amendment. The
(continued...)

13

These principles are identified in a long line of cases, many of which are cited above in the discussion of the alleged 1991 violation.

Defendant therefore does not enjoy qualified immunity from suit in this case.

**IV.  CONCLUSION**

Because Plaintiff has sufficiently stated a claim for a constitutional violation and Defendant does not enjoy qualified or quasi-judicial immunity on Plaintiff's facts, the motion to dismiss is DENIED.

IT IS SO ORDERED.

Dated: May 19, 2015

DEAN D. PREGERSON
United States District Judge

---

³(...continued)
latter kind of warrant is an inevitable consequence of the fact that people share names, birthdays, and physical characteristics; Fourth Amendment doctrine does not, at present, require more precise biometric identification. Rivera v. Cnty. of Los Angeles, 745 F.3d 384, 388 (9th Cir. 2014). (Cf. Dkt. No. 32 (order of Judge Feess discussing the easy availability of unique biometric identification numbers and noting that although controlling case law does not require it, "requiring the use of biometric identifiers would not be at all burdensome and would provide a more precise description of the person sought than traditional identifiers").)  Filling a warrant with information that does *not* belong to its true subject but does belong to some other person, on the other hand, does not satisfy the Fourth Amendment's particularity requirement, because that information cannot possibly guide the arresting official to the right person, about whom there is probable cause to make an arrest.  If the Fourth Amendment protects against the infamous "general warrants" that authorized arrest "without naming any one," Sprigg v. Stump, 8 F. 207, 213 (C.C.D. Or. 1881), logically it must also protect against warrants that authorize arrest of the wrong person entirely.

14